IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Hangzhou Aoshuang ECommerce Co., Ltd. | ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-04565 |
| | ) ) | Judge Martha M. Pacold |
| v. | ) | |
| 2015 men's fashion, et al. | ) ) | Mag. Judge Jeffrey Cole |
| Defendants. | ) ) | |

**Plaintiff's Response to Defendants' Motion to Vacate or Modify the Preliminary Injunction Orders to Lift Asset Restraining Provisions and Incorporated Memorandum of Law**

Plaintiff Hangzhou Aoshuang E-Commerce Co., Ltd. submits this Response to the Motion to Vacate or Modify the Preliminary Injunction Orders to Lift Asset Restraining Provisions filed by 23 of the defendants (collectively, "Defendants") in this matter [Dkt. 226].[1] As explained further below, the asset restraining provisions of the preliminary injunction orders have been properly ordered and are justified. The asset restraints are warranted because Plaintiff is seeking equitable relief and Defendants have not shown that any of the assets relate to sales of non-infringing goods. Therefore, Defendants' motion should be denied in its entirety.

---

[1] The Motion was filed on behalf of the following defendants: No. 124-qixing; Def. No. 146-Star star in the sky; Def. No. 168--william&jack; Def. No. 41--fashion-shop113; Def. No. 186--zagoo; Def. No. 40--fashion-shop112; Def. No. 11--aztuckers; Def. No. 185--yuzebaby; Def. No. 30--dongyang743; Def. No. 39--ZOGAA3 Store; Def. No. 56--Greatmen Store; Def. No. 28--zoggaofficial store; Def. No. 82--ZOGAA SIX Store; Def. No. 25--ConvenientYourLife; Def. No. 180--yangxinyuan; Def. No. 55--Goodgoods8; Def. No. 173--Xiao wu big yards shop; Def. No.44--fengzifei; Def. No. 45--fengzihyt-4; Def. No. 134--Shirley Store; Def. No. 15-babyzaima; Def. No. 33-Encantador KK Store; and Def. No. 182-Your Parcel Store.

**I.     Introduction**

As discussed in the Amended Complaint [Dkt. 3], marketplaces like Amazon, iOffer, eBay, Wish, Joom, Vova, and AliExpress allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales manufacturers would otherwise enjoy. Many of these merchants operate from China under various aliases, maintain little to no inventory, and strive to keep all assets offshore to evade any practical consequences for their illegal actions. An asset restraint to preserve trademark owners' equitable remedies is one of the few effective tools for combatting such offshore Internet store operators and ensuring that there are legitimate consequences for counterfeiters and pirates. Accordingly, in granting the temporary restraining order in this case, this Court determined that without an asset restraint, "Defendants could and likely would modify registration data and content and move any assets from accounts in U.S.-based financial institutions, including without limitation PayPal, Inc. ('Paypal') accounts, to offshore accounts. Proceedings against those who deliberately traffic in counterfeit merchandise are often useless if notice is given." [Dkt. 29].

Through this latest Motion, Defendants are seeking to remove or reduce the asset restraint solely based on the sales of infringing products that Plaintiff has discovered to-date. Defendants have not produced evidence that any of the assets relate to sales of non-infringing products. Additionally, discovery is ongoing, and Defendants' have refused to provide requested sales information related to the assets subject to the restraint.

This Court has authority to maintain the asset restraint because Plaintiff seeks equitable remedies. Under the Lanham Act, this Court also has discretion to restrain funds to award an accounting of profits "for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). Defendants continue to be likely to move any restrained assets offshores, which tips the balance of hardships in Plaintiff's favor.

Additionally, this Motion should be viewed in light of Defendants' history of filing a multitude of motions already in this case, none of which have had merit. To illustrate, this is Defendants' 15th motion in this case, many of which were challenging (again and again) the preliminary relief already granted in this case.[2] Unfortunately, this appears to be a pattern for Defendants' counsel.[3]

## II.  Procedural History

Following Plaintiff's motion, Judge Kendall determined that good cause existed to justify the entry of a temporary restraining order against all 187 defendants in this case. [Dkt. 28]. While Plaintiff was awaiting discovery responses from third parties (*e.g.*, Amazon), Plaintiff successfully moved this Court to extend the TRO for an additional 14 days. [Dkt. 33]. Plaintiff appeared on its motion for entry of the preliminary injunction on August 6, 2019, as did counsel for a subset of the Defendants here who objected to the entry of the PI. The preliminary injunction was entered as to all defendants in the case with the exception of 5-ALING FASHION COOL, BABYZAIMA, 33-ENCANTADOR KK STORE, 68-HEHENI STORE, 71-HOME FULL, 117-NIUBI STORE, 131-SHENJIANFENG, 172-WOWAN1, and 182 YOUR PARCEL STORE (the "Excepted Defendants"). [Dkt. 43].

For the Excepted Defendants, a briefing schedule was set for them to oppose entry of the preliminary injunction. [Dkt. 42]. That same day, Plaintiff filed a motion to extend the TRO with respect to the Excepted Defendants for the duration of briefing and resolution of the Excepted

---

[2] *See*, generally, Dkts. 51, 55, 69, 70, 71, 96, 131, 155, 156, 183, 191, 198, 205, 215, 226.
[3] *See*, Weifang Tengyi Jewelry Trading Co., Ltd. v. The Partnerships and Unincorporated Associations, No. 18-cv-4651, Dkt. 319, Motion for Sanctions (arguing, in an action filed by L. Ford Banister, that this "action has been plagued with duplicative, groundless, and unjustified filings that have resulted in [defendant] having to expend excessive time and resources. Each of these filings needlessly multiplied and prolonged the litigation, wasted court resources, and cause unnecessary effort on [defendant's] part to respond and address each in part." and "in what has become a frequent pattern of behavior, Plaintiff spent over twenty pages belaboring the same meritless arguments it made in its prior motion…").

Defendants' arguments against the entry of the preliminary injunction over them. [Dkt. 40]. Over those Excepted Defendants' objections, Judge Kendall granted Plaintiff's motion to extend the TRO over them for that duration. [Dkt. 46]. The following day, counsel for the Excepted Defendants and additional defendants (now collectively the "Defendants") filed their first emergency motion to lift the preliminary injunction, for damages, and other relief. [Dkt. 55]. On August 14, 2019, after oral argument, Judge Kendall denied the Defendants' first emergency motion. [Dkt. 63].

On August 22, 2019, the Defendants filed, among other motions, another motion to vacate the TRO and preliminary injunction. [Dkt. 71]. While originally set for presentment on August 27, 2019, the case's reassignment to Your Honor resulted in that date being stricken. [Dkt. 76]. The Defendants appeared the following day, on yet another emergency basis, before Judge Coleman who declined to grant the Defendants' motions, relegating briefing on this matter to the original schedule set by Judge Kendall. [Dkt. 42, 84]. Additionally, on August 27, 2019, the Defendants filed a memorandum of law opposing Plaintiff's motion for a preliminary injunction. [Dkt. 82]. Plaintiff filed its reply on September 10, 2019. [Dkt. 100]. On October 29, 2019, Defendants filed a Motion for Sanctions again seeking relief from the preliminary injunction orders. [Dkt. 155]. In accordance with this Court's order [Dkt. 164], Plaintiff filed its response on December 4, 2019. [Dkt. 206]. On December 24, 2019, Defendants filed this Motion challenging the asset restraints. [Dkt. 226].

**III.   The Asset Restraint is Proper Because Plaintiff is Seeking Equitable Remedies.**

As Defendants acknowledge, a restraint on assets is proper if a suit seeks equitable relief. CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002). Plaintiff seeks equitable relief. Plaintiff's Amended Complaint [Dkt. 3] includes, among other relief, a claim for an account of Defendants' profits, which is an equitable remedy. Gucci Am. v. Bank of China, 768 F.3d 122, 130-133 (2d. Cir. 2014). The claim is based on 15 U.S.C. § 1117(a), which provides that a plaintiff in a trademark infringement case shall be entitled "subject to the principles of equity, to recover (1)

defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Under that statute, if "the court shall find that the amount of the recovery based on profits is either inadequate or excessive, the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Id.

Defendants devote a significant portion of the motion to arguing that Plaintiff has not established sufficient sales of infringing products to justify the asset restraint on its accounts. However, the burden is on the Defendants as they are the parties seeking relief. "To exempt assets from an asset freeze, '[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities.'" Entm't One UK Ltd. v. 2012Shiliang, 384 F. Supp. 3d 941, 954-55 (N.D. Ill. 2019), quoting, Luxottica USA LLC v. The P'ships & Unincorporated Assocs. Identified On Schedule "A", No. 14 C 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015) (Leinenweber, J.); Monster Energy Co. v. Wensheng, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015); N. Face Apparel Corp. v. TC Fashions, Inc., No. 05 Civ. 9083, 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006).

Defendants have failed to meet their burden. The only documentation submitted by Defendants is a summary of the accounts, showing the amounts that have been restrained on certain dates and the amount of sales that Plaintiff has, to date, discovered to have been of infringing products. Defendants have not provided any evidence of any of these other, allegedly non-infringing products offered for sale by the Defendants or any affirmation that these other products have been objectively examined to verify that they are free of infringing marks. Importantly, the piecemeal responses to the MIDP and Plaintiff's expedited discovery requests - propounded back on August 22, 2019 - were not certified as required under the MIDP and Rule 33, respectively. Decl. of Adam E. Urbanczyk, ¶ 6.; See, Luxottica USA LLC (denying modification of asset restraint where defendants' evidence was not accompanied by a declaration). Notably, Defendants have refused to

provide expedited discovery sought by Plaintiff as to these sales.[4] Finally, the credibility of Defendants' assertions are suspect because Defendants' counsel has filed declarations with inaccurate sales information in another case involving trademark counterfeiting through China-based Internet stores.[5]

Courts have regularly denied similar attempts by counterfeiters to dissolve asset restraints. Monster Energy Co. ("Defendants have not submitted any evidence regarding their PayPal account transactions to show that these funds are not the proceeds of counterfeiting activities."); River Light V, L.P., et al. v. Zhangyali, et al., No. 15-cv-05918 (N.D. Ill. Sept. 9, 2015) (Dkt. 46) (Shah, J.) (denying motion to reduce asset restraint against China based Internet store offering for sale counterfeit Tory Burch products); H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd., No. 16-CV-10096, 2017 WL 6733685, at *6 (N.D. Ill. Dec. 18, 2017) (Blakey, J.) (same); Gianni Versace, S.p.A., v. Zou Yulan, et al., No. 17-cv-07869 (N.D. Ill Dec. 4, 2017) (Coleman, J.) (same).

The court in Klipsch Grp., Inc. v. Big Box Store Ltd. did initially reduce the asset restraint to $20,000 based on the defendant's significant U.S. sales, finding that the plaintiff would likely be able

---

[4] Plaintiff specifically requested as part of its expedited discovery requests, from each Defendant, "Documents, electronically stored information, and things sufficient to show each transaction (including production identification number, item description, and photo) constituting the funds currently frozen in any of Defendant's Financial Accounts." (emphasis added) Decl. of Adam E. Urbanczyk, ¶ 2. The twenty Defendants that are related to Zhou failed to respond at all to this request. Decl. of Adam E. Urbanczyk, ¶ 3, Ex. A. The other three Defendants have completely objected to providing sales information relating to the assets that are currently restrained. Decl. of Adam E. Urbanczyk, ¶ 3, Ex. B. Even the documents produced as part of the MIDP were nearly illegible, certainly in an unreasonable format, without association to product photos, and otherwise incomplete. Decl. of Adam E. Urbanczyk, ¶ 5, Ex. C.

[5] In Otter Products, LLC, et al. v. Dongguan Chengchun Elect. Tech. Co., Ltd., No. 17-cv-06009 (N.D. Ill. Sept. 28, 2017), counsel for Defendants Chuangbang Store, minjifen-0, yitsing, and Uloveido Official Store, L. Ford Banister, filed declarations in connection with defendants' motion to modify the preliminary injunction order to dissolve the temporary asset restraint that were not accurate. Specifically, defendants' declarations alleged minimal sales, while their discovery responses revealed a larger number of sales. Defendants' counsel acknowledged the discrepancy in the number of sales in a supplemental declaration acknowledging that the additional sales were discovered "in response to the more detailed requests for production and upon further investigation." Otter Products, LLC, et al. v. Dongguan Chengchun Elect. Tech. Co., Ltd., No. 17-cv-06009 (N.D. Ill. Sept. 28, 2017) (Dkt. No. 76).

to recover its damages. Klipsch Grp., Inc. v. Big Box Store Ltd., No. 12 CIV. 6283 AJN, 2012 WL 5265727, at *1 (S.D.N.Y. Oct. 24, 2012). Here, however, Defendants have shown no such significant U.S. sales. Further, the court in Klipsch Group reinstated an asset restraint for $5 million against the defendant after discovery determined that sales existed beyond those initially reported. Klipsch Grp., Inc. v. Big Box Store Ltd., No. 12 CIV. 6283 AJN (S.D.N.Y. Aug. 8, 2014) (Dkt. 213).

Therefore, it is premature for this Court to dissolve or reduce the asset restraint with the present record. Defendants' bare assertion that funds flowing into the Defendants' accounts after the entry of the temporary restraining order was issued are not related to the sales of infringing products should not be credited, especially given Defendants' incomplete document production. *See*, H-D U.S.A., LLC (noting that a declaration from defendant's manager stating that the assets are not derived from sales of infringing products was a "conclusory statement" that "plainly does not qualify as documentary proof that Defendant's PayPal account contains no proceeds from its counterfeiting activities."); *see also*, Manolo Blahnik Int'l Ltd. v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A", No. 14 CV 9752, Dkt. 75 at 4 (Coleman, J.) ("counsels' belief that this Court would simply vacate its judgment and order a turn-over of funds without testing the veracity of their claims is incredible.").

## IV.     Statutory Damages under the Lanham Act Are an Equitable Remedy

Plaintiff, as an alternative to damages and an accounting of Defendants' profits, may seek an award of statutory damages as a form of equitable relief.[6] Congress added Section 35(c) of the Lanham Act to make statutory damages available in counterfeiting cases as an alternative to actual damages and profits. The rationale for these damages was to address plaintiff's practical inability to determine defendants' profits or sales, recognizing that "counterfeiters' records are frequently

---

[6] As of December 24, 2019, the Giraffe Mark is registered with the United States Patent and Trademark Office, Reg. No. 5,942,335. *See*, Decl. of Adam E. Urbanczyk, ¶ 7, Ex. D.

nonexistent, inadequate, or deceptively kept…making proving actual damages in these cases extremely difficult if not impossible." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004), *quoting*, S. REP. 104-177, 10.

The Lanham Act authorizes this Court to grant Plaintiff statutory damages in lieu of actual damages and profits as a form of final equitable relief. Section 35(c) provides that "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages…as the court considers just." Therefore, this Court has the inherent power to restrain Defendants' assets in order to ensure the availability of that relief. Statutory damages under the Lanham Act are a "matter within the sole province of the court." Tobinick v. Scripps Clinic Med. Group, 81 Fed. Appx. 677, 679 (9th Cir. 2003); *see also*, Design Basics, LLC v. Drexel Bldg. Supply, Inc., 2016 WL 5794746, *6 (E.D. Wisc. Oct. 4, 2016) ("juries do not award statutory damages, judges do."); *Cf.*, Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 345 (1998) (holding the right to a jury trial includes the right to have a jury determine the amount of copyright statutory damages, where the statute providing statutory damages for copyright infringement, 17 U.S.C. § 504(c), does not include language regarding the principles of equity).

Profits are only one of several factors the Court can consider in determining an award of statutory damages. The Court can also consider "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent," as well as the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. Chi-Boy Music v. Charlie Club, 930 F.2d 1224, 1229 (7th Cir. 1991); Lorillard Tobacco Co. v. S & M Cent. Serv. Corp., No. 03 C 4986, 2004 WL 2534378, at *6 (N.D. Ill. Nov. 8, 2004) (Holderman, J.). The asset restraint prevents Defendants from transferring assets, preserving the possibility of Plaintiff's

equitable relief which may be either Defendants' profits *or* statutory damages as a proxy for an accounting of actual profits and damages. *See*, 15 U.S.C. § 1117; Lorillard Tobacco ("A counterfeiter must fear more than just having to turn over his ill gotten gains to the rightful owners. Instead, the counterfeit[er] must understand that he risks his financial future by engaging in his illegal practice."). Accordingly, the asset restraint should remain in place to ensure the availability of the equitable relief of statutory damages.

**V.      The Balance of Harms Have Not Changed and Continue to Favor Plaintiff**

The factual basis underlying this Court's entry of the TRO has not changed and continues to favor Plaintiff.  Defendants have failed to identify any U.S.-based assets reachable by a judgment of this Court and Defendants are likely to swiftly move the restrained assets outside of the U.S. if the restraint is lifted.  According to the Defendants, despite the entry of the TRO and preliminary injunction, their assets have grown substantially and their business continue to operate.  *See*, Decls. of Zhou Wenbo [Dkt. 194 ¶¶ 6, 8] (funds continue to accrue in the retrained accounts totaling $1,395,584.99); [Dkt. 154, ¶ 8-9] (business employs 62 people).  Without the asset restraint, Plaintiff would be prevented from realizing its right to final equitable relief of an account of profits and damages, or alternatively, statutory damages, and would be irreparably harmed.  Defendants, on the other hand, only have a potential harm that is purely monetary, modest, and for a finite period of time.  Defendants have no legitimate interest in profits from the sale of Infringing Giraffe Products, the amount of which is, due in part to Defendants' withholding of certain information, currently unknown.  Moreover, as willful counterfeiters, Defendants should be given little equitable consideration.  In assessing the risk of irreparable harm to Defendant, the Court should "exclude[] any burden [the defendants] voluntarily assumed by proceeding in the face of a known risk."

Luxottica Grp. S.p.A. v. Light in the Box Ltd., No. 16-cv-05314, 2016 WL 6092636 at *8 (N.D. Ill. Oct. 19, 2016) (Dow, J.).

## VI. As an Alternative, Plaintiff is Entitled to an Attachment of Defendants' Assets under Fed. R. Civ. P. 64 and Section 4-101 of the Illinois Compiled Statutes.

Alternatively, Plaintiff requests that the Court stay any ruling until Plaintiff can file a motion pursuant to Fed. R. Civ. P. 64 to seize Defendants' assets to secure satisfaction of the potential judgment. Rule 64 provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). As established above, this Court also has an "adequate foundation [for an] order requiring the defendant to bring funds from outside of Illinois into the jurisdiction to deposit them in the court." M.S. Distrib. Co. v. Web Records, Inc., No. 00 C 1436, 2003 WL 21267094, at *1 (N.D. Ill. May 30, 2003) (Schenkier, Magistrate J.). This relief is separate from the relief available to Plaintiff through Fed. R. Civ. P. 65 and is not barred by the Supreme Court's decision in Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). M.S. Distrib. Co., 2003 WL 21267094 at *11 ("Grupo Mexicano in no way undermines the authority of this Court, conferred by Fed. R. Civ. P. 64, to use the Illinois prejudgment attachment statute.").

Under Illinois law, the Illinois prejudgment attachment statute empowers this Court to issue an attachment order to the sheriff, ordering the officer to attach Defendants' property in Cook County once the statutory requirements are met. 735 ILCS § 5/4-101. The purpose of the Illinois prejudgment attachment statute "is to bring assets within the control of the Court *before* there is the

opportunity for them to be dissipated or otherwise rendered unavailable to satisfy a judgment." M.S. Distrib. Co., 2003 WL 21267094, at *4.

Plaintiff satisfies the statutory requirements of the Illinois prejudgment attachment statute. Plaintiff is a creditor with a money claim arising from a tort cause of action as trademark infringement is a commercial tort and Plaintiff is entitled to a maximum award of $2,000,000 in statutory damages, as well as attorney's fees, from Defendants' willful counterfeiting of the Giraffe Mark. See, Hard Rock Café Licensing Corp. v. Concession Servs., 955 F.2d 1143, 1148 (7th Cir. 1992) ("we have treated trademark infringement as a species of tort"). Defendants are residents of the People's Republic of China and not of Illinois. See, e.g., Decl. of Zhou Wenbo [Dkt. 194, ¶ 3]. Accordingly, pursuant to Fed. R. Civ. P. 64, Plaintiff can seize Defendants' assets to secure satisfaction of the potential judgment before Defendants have the opportunity to dissipate and disappear the assets.[7]

## VII. Conclusion

Plaintiff has previously established, including over Defendants' objections, that preliminary injunctive relief, including a restraint on certain assets of the Defendants, was and continues to be appropriate in this case. Defendants have not met *their* burden of establishing that any of the restrained assets relate to sales of non-infringing products, despite Defendants' substantial opportunities to do so, and Defendants provide no basis on which to believe that any funds which are unrestrained would thereafter be unreachable. Moreover, the Court is empowered to restrain assets as necessary and just to preserve Plaintiff's ability under the Lanham Act to elect statutory damages. Respectfully, Plaintiff requests that this motion to remove or reduce the asset restraint be denied and the status quo be maintained.

---

[7] When seeking the entry of an order for attachment, Plaintiff will submit an affidavit as specified by 735 ILCS §§ 5/4-104, 5/4-107.

Dated this December 30, 2019

        Respectfully submitted,

        /s/Adam E. Urbanczyk
        Adam E. Urbanczyk
        AU LLC
        564 W. Randolph St. 2nd Floor
        Chicago, IL 60661
        (312) 715-7312
        (312) 646-2501 (fax)
        adamu@au-llc.com
        ARDC No. 6301067

        *Counsel for Plaintiff Hangzhou Aoshuang E-Commerce Co., Ltd.*

**Certificate of Service**

I hereby certify that a true and correct copy of this **Response to Defendants' Motion to Vacate or Modify the Preliminary Injunction Orders to Lift Asset Restraining Provisions and Incorporated Memorandum of Law** will be sent via the Court's e-filing system to counsel of record this December 30, 2019.

| | |
|---|---|
| Larry Ford Banister, II<br>The Law Office of L. Ford Banister, II<br>PO Box 3514 PMB 23332<br>New York, NY 10008<br>United States<br>(212) 574-8017<br>ford@fordbanister.com | Daliah Saper<br>Saper Law Offices<br>505 N. LaSalle #350<br>Chicago, IL 60654<br>(312)527-4100<br>dsaper@saperlaw.com |
| Charles Edward McElvenny<br>Law Offices of Charles E. McElvenny<br>120 N LaSalle St Suite 1200<br>Chicago, IL 60602<br>312 291 8330<br>charlie@cemlawfirm.com | John Yo-Hwan Lee<br>Lee & Breen LLC<br>188 Industrial Drive, Suite 403<br>Elmhurst, IL 60126<br>(312) 241-1420<br>jlee@leebreenlaw.com |
| Timothy Tiewei Wang<br>Ni, Wang & Massand, PLLC<br>8140 Walnut Hill Ln., Ste. 500<br>Dallas, TX 75231<br>(972) 331-4603<br>twang@nilawfirm.com | Joon M Khang<br>KHANG & KHANG LLP<br>4000 Barranca Parkway, Suite 250<br>Irvine, CA 92604<br>(949) 419-3834<br>Email: joon@khanglaw.com |

/s/Adam E. Urbanczyk
Adam E. Urbanczyk
AU LLC
564 W. Randolph St. 2nd Floor
Chicago, IL 60661
(312) 715-7312
(312) 646-2501 (fax)
adamu@au-llc.com
ARDC No. 6301067

*Counsel for Plaintiff Hangzhou Aoshuang E-Commerce Co., Ltd.*