IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANGZHOU AOSHUANG E-COMMERCE CO, LTD. | ) ) ) |
| Plaintiff, | ) Case No. 1:19-cv-04565 ) ) Judge Martha M. Pacold |
| v. | ) ) Mag. Judge Jeffrey Cole |
| ZHOU WENBO, ET AL. | ) ) |
| Defendants. | ) ) |
| ZHOU WENBO, | ) ) |
| Counter-Plaintiff, | ) ) |
| v. | ) ) |
| HANGZHOU AOSHUANG E-COMMERCE CO., LTD., WANG HOUBING AND DONGDONG ZHAO | ) ) ) ) |
| Counter-Defendants. | ) ) ) |

**COUNTER-PLAINTIFF ZHOU WENBO'S MOTION TO STRIKE AFFIRMATIVE
DEFENSES AND INCORPORATED MEMORANDUM OF LAW**

Counter-Plaintiff Zhou Wenbo, (hereinafter, "Zhou" or "Counter-Plaintiff") by and through his counsel, Ford Banister IP, hereby moves this Honorable Court to strike Counter-Defendants Hangzhou Aoshuang E-Commerce Company, Ltd., (hereinafter, "HAECO") Wang Houbing, (hereinafter, "Wang") and DongDong Zhao's (hereinafter, "DongDong), (collectively, "Counter-Defendants") affirmative defenses. In support hereof, Counter-Plaintiff presents the following Memorandum of Law.

1

**MEMORANDUM OF LAW**

I.  **BACKGROUND AND PROCEDURAL POSTURE**

On July 6, 2019, HAECO filed the instant suit alleging false designation of origin, violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.) and copyright infringement. [Doc. 3] HAECO named as defendants one hundred and eighty-six ecommerce stores. [Doc. 3-2] Among the one hundred and eighty-six ecommerce stores originally named as defendants, twenty belonged to Counter-Plaintiff.[1] [Doc. 324 at ¶ 8] HAECO filed its first amended complaint two days after the original, on July 8, 2019. [Doc. 7] HAECO filed its second amended complaint (hereinafter, "SAC") on July 13, 2020, alleging the same causes of action set out in HAECO'S original and first amended complaints and adding Counter-Plaintiff as a party defendant. [Docs. 314, 3 and 7] On August 10, 2020, Counter-Plaintiff and the Defendant Internet Stores timely answered HAECO'S SAC and asserted their affirmative defenses. [Doc. 324] Counter-Plaintiff also asserted counterclaims for false designation of origin and abuse of process. [Id.] Counter-Defendants submitted their Answer on August 31, 2020, asserting six affirmative defenses. [Doc. 332] Counter-Plaintiff now moves to strike Counter-Defendants' first, second, third, fourth and sixth affirmative defenses.

II.  **STANDARD OF LAW**

A district court may strike an insufficient affirmative defense pursuant to Fed.R.Civ.P. 12(f). *Heller Fin'l Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A motion under Rule 12(f) allows a court to strike any "redundant, immaterial, impertinent, or

---

[1] Defendants No. 124-qixing; Def. No. 146-Star star in the sky; Def. No. 168--william&jack; Def. No. 41--fashion-shop113; Def. No. 186--zagoo; Def. No. 40--fashion-shop112; Def. No. 11--aztuckers; Def. No. 185--yuzebaby; Def. No. 30--dongyang743; Def. No. 39--ZOGAA3 Store; Def. No. 56--Greatmen Store; Def. No. 28--zoggaofficial store; Def. No. 82--ZOGAA SIX Store; Def. No. 25--ConvenientYourLife; Def. No. 180--yangxinyuan; Def. No.55--Goodgoods8; Def. No. 173--Xiao wu big yards shop; Def. No.44--fengzifei; Def. No. 45--fengzihyt-4; Def. No. 134--Shirley Store; Zhou Wenbo (hereinafter, the "Defendant Internet Stores")

scandalous matter." Fed.R.Civ.P. 12(f). Affirmative defenses are pleadings and, therefore, are subject to all of the pleading requirements of the Federal Rules of Civil Procedure. *Heller*, 883 F.2d at 1294. Thus, affirmative defenses must assert a "short and plain statement" of the defense as required by Rule 8(a). *Id*. Affirmative defenses must also contain sufficient factual matter, accepted as true, to state an affirmative defense to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. Page 3 1937 1939, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 156 L. Ed. 2d 929 (2007)). The basic concept of an affirmative defense is an admission of the facts alleged in the complaint, coupled with the assertion of some other reason that the defendant is not liable. See, e.g., *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982). Conclusory, vague, and unsupported affirmative defenses that do not meet the requirements imposed by Rule 8(a) are legally insufficient. *Heller*, 883 F.2d 1294-95. For further guidance, courts in this district employ a three-part test to examine the sufficiency of an affirmative defense to determine whether: (1) the matter is properly pled; (2) the defense complies with Rule 8; and (3) the defense withstands a Rule 12(b)(6) challenge. *Bobbitt*, 532 F. Supp. at 737.

**III. SUMMARY OF THE ARGUMENT**

Counter-Defendants' first, second, third and fourth affirmative defenses negate Counter-Plaintiff's proof and are thus not properly stated as affirmative defenses. Counter-Defendants have failed to plead facts sufficient to support their sixth affirmative defense of *in pari delicto* which is unavailable to Counter-Defendants in the instant case. Grant of the instant motion to strike removes unnecessary clutter from the case and is thus in the interest of judicial efficiency.

IV.     **ARGUMENT**

    a)     **Counter-Defendants' First, Second, Third and Fourth Affirmative Defenses Negate Counter-Plaintiff's Proof and are Thus Not Properly Stated as Affirmative Defenses**

"[A] defense is an affirmative defense (a) 'if the defendant bears the burden of proof' under state law or (b) 'if it [does] not controvert the plaintiff's proof.'" *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (quoting *Brunswick Leasing Corp. v. Wis. Cent., Ltd.*, 136 F.3d 521, 530 (7th Cir. 1998) "When a defendant attacks the plaintiff's *prima facie* case, it is a 'negative defense,' which is distinct from an affirmative defense." *Escobedo v. Oswego Junction Enters. LLC*, Case No. 17-cv-0682, at *8 (N.D. Ill., July 24, 2017) It is improper to assert something as an affirmative defense that is nothing more than a denial of an allegation contained in the complaint." *Velez v. Longhorn Steaks & Darden Rests., Inc.*, Case No. 12-cv-4857 at *1-2 (N.D. Ill., September 10, 2012) (Citations Omitted) Applying this well established standard, courts in this judicial district regularly strike denials that merely attempt to negate the allegations of the complaint. See *Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, Case No. 17-cv-9161 at *12 (N.D. Ill., Sep. 17, 2020) (accord); *Yash Raj Films (USA) Inc. v. Atlantic Video*, Case No. 03-cv-7069 at *6 (N.D. Ill., May 27, 2004); *Levin v. Abramson*, Case No. 18-cv-1723 at *19 (N.D. Ill., May 13, 2020) (Pacold, J.) (same)

Counter-Defendants' first stated affirmative defense is entitled "Valid Copyright and Trademark." [Doc. 332 at 16] Therein, Counter-Defendants allege that 1) HAECO has a valid copyright registration for the Giraffe Work; 2) Wang Houbing is the creator of the Giraffe Work; 3) Counter-Plaintiff has not alleged that he created the Giraffe Work; 4) Counter-Defendants are entitled to utilize the Giraffe Work and to prevent others from utilizing the Giraffe Work without permission; 5) Counter-Defendant petitioned the U.S. Patent and Trademark Office for

4

registration of the Giraffe Mark, Serial No. 8839728; 6) Counter-Defendants have utilized the Giraffe Mark solely with goods associated with their products; and 7) Counter-Defendants have never licensed nor allowed Counter-Plaintiff to utilize its Giraffe mark for any goods. [Id.] Counter-Defendants do not attempt to explain the legal significance of any of these statements. Even construing them broadly, none admit the allegations in the complaint or seek to avoid liability, in whole or in part, by new allegations of excuse, justification or other negating matters. Six of the seven statements simply negate Counter-Plaintiff's affirmative allegations and generally suggest that Counter-Defendants have legitimate rights in the Giraffe Mark and Giraffe Work. [Doc. 325 at ¶¶ 11-13, 30, 31, 41, 42] The significance of the second statement, that Counter-Plaintiff has not alleged that he created the Giraffe Work, is unclear as, as is fully set out below, such an allegation is not necessary or germane to either of Counter-Plaintiff's causes of action. [Doc. 332 at 16]

Similarly, Counter-Defendants' second affirmative defense is entitled "Proper Purpose." Here, Counter-Defendants allege that 1) HAECO "sought and received a temporary restraining order against all defendants in this action based on the likelihood that they could abscond with monies or assets gained via infringing activities and leave Counter-Defendant HAECO with no recourse; 2) the purpose of the TRO was "to maintain the status quo and prevent further harm;" that 3) "at the time of the temporary order, Counter-Defendant HAECO did not know the identity of the entities or individuals behind the various on-line retailers infringing its copyrighted and protected works; and 4) that "Counter-Plaintiff's assertion that they were (*sic*) targeted is without basis." [Id. at 16-17] In sum, Counter-Defendants submit that they had no ill intent, were merely seeking to protect their rights and did not target Counter-Plaintiff. These statements likewise

5

serve no purpose but to negate the allegations of the counterclaim. [Doc. 325 at ¶¶ 21, 24, 25, 39-46]

Continuing in the same vein, Counter-Defendants' third affirmative defense is entitled "Proper Process." [Doc. 332 at 17] Here, Counter-Defendants allege that 1) "Counter-Defendant HAECO sought and received a temporary restraining order against all defendants in this action in the proper course of the case;" 2) "It is standard in cases where the defendants may be foreign entities to seek a restraining order to maintain the status quo;" 3) "This is based on the likelihood that defendants could abscond with monies or assets gained via infringing activities and leave Counter-Defendant HAECO with no recourse;" 4) "Counter-Defendant HAECO has sought to timely move the case to resolution as it seeks its own day court;" and 5) "Counter-Plaintiff meanwhile has delayed the case and even been compelled to cooperate in the discovery process. Such is the cause for delay in the case, not Counter-Defendants." [Doc. 332 at 17] Once again, these statements serve no purpose but to negate the allegations of the counterclaim. [Doc. 325 at ¶¶ 21, 24, 25, 39-46] In fact, Counter-Defendants' second affirmative defense is largely overlapping with its second affirmative defense.

Finally, for their fourth affirmative defense, Counter-Defendants state that "There is no evidence that Counter-Defendant HAECO is so organized and controlled nor that its affairs are so conducted that it is in fact a mere instrumentality of another individual, namely either Counter-Defendant Houbing Wang or Counter-Defendant Dongdong Zhao, such that either individual may be liable for the actions of Counter-Defendant HAECO." [Doc. 332 at 17] On its face, this conclusory statement admits nothing and serves no purpose but to contradict the allegations of the counterclaim and Counter-Plaintiff's proof. [Doc. 325 at ¶¶ 8-10; 14-46] Even if a properly stated affirmative defense, such conclusory, vague, and unsupported affirmative

6

defenses do not meet the requirements imposed by Rule 8(a) and are thus legally insufficient. *Heller*, 883 F.2d 1294-95. As with Counter-Defendants' first three stated affirmative defenses, this fourth affirmative defense fails as a matter of law and is properly stricken.

> **b)** **Counter-Defendants Have Failed to Plead Facts Sufficient to Support Their Sixth Affirmative Defense of *In Pari Delicto*[2] Which is Unavailable to Counter-Defendants in the Instant Case**

For their sixth affirmative defense, Counter-Defendants allege as follows:

> "Counter-Plaintiff (*sic*) counterclaims are barred by the doctrine of unclean hands insofar as, inter alia, Counter-Plaintiff is not the author or the creator of the giraffe design it is attempting to enforce. The giraffe design Counter-Plaintiff pretends to own is actually a registered Korean trademark of Kwangsoo Kim, a Korean individual who had provided an exclusive license to use the "Giraffe Logo" in association with the sale of clothing items in the United States to Have 2 Have, Inc., a California corporation ("H2H"). See, e.g., Dkt. 80-1 ¶¶ 3, 7; 80-3. H2H first sold products bearing the Giraffe Logo on May 18, 2013, which predates Counter-Plaintiff's alleged first U.S. sale by nearly one year. Id., at ¶ 14. At no point did Kwangsoo Kim or H2H ever license or assign any rights in or to the giraffe design to Counter-Plaintiff, who is merely a reseller of others' products through his network of China-based e-commerce storefronts. Zero commercial goodwill derived from the sale of products bearing the giraffe design inured to Counter-Plaintiff.
>
> On information and belief, Counter-Plaintiff attempted to acquire a license and/or assignment of the rights in and to the giraffe design from H2H. However, Counter-Plaintiff was denied. Counter-Plaintiff nevertheless proceeded to file an in-use trademark application for the giraffe design - Serial Number 88,722,501 - wherein Counter-Plaintiff declared, inter alia, that:

- "The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered";

---

[2] Although Counter-Defendants have titled their sixth affirmative defense as "Unclean Hands," Counter-Defendants seek to avoid legal, rather than equitable, relief sought by Counter-Plaintiff. The defense is therefore properly termed as *in pari delicto*. See *Schlueter v. Latek*, 683 F.3d 350, 355 (7th Cir. 2012) ("When as in such cases the plaintiff is asking for equitable relief, the in *pari delicto* defense is referred to as the unclean-hands defense."); *Pieczynzki v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989) ("To that extent ... there is a defense of 'unclean hands' (if equitable relief is sought) or 'in pari delicto' (if legal relief is sought.")

7

- "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."; and

- "To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support."

Counter-Plaintiff was at all times aware of H2H's prior use of the giraffe design in the United States, and Counter-Defendant HAECO's us (*sic*) of the Giraffe Mark, in the U.S. and of its own use of the giraffe design being unauthorized, and the above declarations could not have been plausibly made. Counter-Plaintiff's use of the giraffe design deceives customers and Counter-Plaintiff, with bad intent, is attempting to supplant lawful rights holders with its own conjured rights.

[Unquote] [Doc. 332 at 18-19]

In addressing Counter-Defendants' sixth affirmative defense, Counter-Plaintiff first submits that the Court should view these allegations with extreme skepticism and as demonstrative of Counter-Defendants' unparallelled lack of credibility and willingness to present completely contradictory and shifting arguments when circumstances might suggest there is advantage to be gained. Counter-Plaintiff reminds Counter-Defendants that in their original complaint, Counter-Defendants alleged that they had used the Giraffe Mark since 2013 [Doc. 3 at ¶ 12] with first use in interstate commerce on April 2, 2015. [Id. at ¶ 17] In their sworn trademark application, verified by Wang, Counter-Defendants present their "first use anywhere" date as "At least as early as 04/02/2015." [Doc. 52-1 at 3] In their SAC, Counter-Defendant attempts to back the date up to August 19, 2014. [Doc. 314 at 18] This is consistent with Counter-Defendants' strategy of claiming an earlier date of use of the Giraffe Mark and creation of the Giraffe Work in the face of Defendants' evidence of prior use. [Doc. 60 at ¶¶ 6-7; 60-1, 60-2]

8

Here, we have more of the same on a perhaps even more pronounced basis. Earlier in this case, H2H appeared to challenge the preliminary injunction and asserted a counterclaim against Plaintiff on the basis of its alleged superior rights in the Giraffe Mark. [Docs. 80 & 116] Counter-Defendants emphatically rejected H2H's claims, opposing H2H's emergency motion to vacate the preliminary injunction order and moving to dismiss H2H's counterclaim on the grounds that H2H had failed to demonstrate that it had any rights to the Giraffe Mark. [Docs. 101 & 130] In fact, HAECO's motion to dismiss H2H's counterclaim was based entirely on H2H's lack of standing. [Doc. 130] HAECO argued that H2H's "suspiciously unabashed assertion of rights attempts to mask [H2H's] complete lack of any established rights." [Id. at 1] Yet now Counter-Defendants claim as established and present as evidence of Counter-Plaintiff's "bad intent" H2H's supposed superior rights based on an alleged date of first use which, quite notably, precede Counter-Defendants' own alleged dates of first use. [Doc. 60 at ¶¶ 6-7; 60-1, 60-2; 314 at 18; 332 at 18-19] In the somewhat overlapping factual averments of their fifth affirmative defense, Counter-Defendants actually claim, in direct contradiction to the averment of their SAC that "The Giraffe Mark and Giraffe Work are exclusive to Plaintiff and its licensees...," [Doc. 314 at ¶ 22] that "Counter-Defendant HAECO, separate from its ownership of the rights in and to the Giraffe Mark, has an exclusive sublicense to use the giraffe design, which Counter-Plaintiff pretends to own, within the United States." [Doc. 332 at 18] The Court may find that Counter-Defendants are properly estopped from asserting these contrary assertions under the doctrines of judicial estoppel[3] and judicial admissions.[4] Counter-Plaintiff will address

---

[3] See *United States v. Hallahan*, 756 F.3d 962, 975 (7th Cir. 2014) ("Judicial estoppel is an equitable concept that prevents parties from playing 'fast and loose' with the courts by prevailing twice on opposing theories." *In re Airadigm Communications, Inc.*, 616 F.3d 642, 661 (7th Cir.2010) (quoting *Butler v. Vill. of Round Lake Police Dep't*, 585 F.3d 1020, 1022 (7th Cir.2009)). Although there is no formula for judicial estoppel, the Supreme Court has identified at least three pertinent factors for courts to examine: "(1) whether the party's later position was

Counter-Defendants' consistent inconsistency and unabashed vacillation outside of the instant motion to strike affirmative defenses and will leave the treatment of this course of conduct here to the sound discretion of the Court.

Counter-Defendants' basic premise that "Counter-Plaintiff (*sic*) counterclaims are barred by the doctrine of unclean hands insofar as, inter alia, Counter-Plaintiff is not the author or the creator of the giraffe design it is attempting to enforce" simply has no basis in and is in fact contrary to well established law. In the copyright realm, originality is "the *sine qua non*..." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991) "To qualify for copyright protection, a work must be original to its author." *Id*. However, this rule is even limited in the copyright realm as "in the absence of copyright . . . protection, even original creations are in the public domain and may be freely copied." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2nd Cir. 1980). There is no equivalent requirement of creation in trademark law. Rather, "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Brandt Indus., Ltd. v. Pitonyak Mach. Corp.*, No. 1:10-cv-0857-TWP-DML, at *7-8 (S.D. Ind., Aug. 8, 2012) citing *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)

---

'clearly inconsistent' with its earlier position; (2) whether the party against whom estoppel is asserted in a later proceeding has succeeded in persuading the court in the earlier proceeding; and (3) whether the party 'seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).")

[4] See *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal."); *In re Lefkas Gen. Partners*, 153 B.R. 804 (N.D.Ill.1993) (noting that judicial admissions are "any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings.").

Further, United States trademark law is based on the doctrine of territoriality, which recognizes that "a trademark has a separate legal existence under each country's laws" and is afforded protection by those laws. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2nd Cir. 2007) (quoting *Osawa Co. v. B H Photo*, 589 F.Supp. 1163, 1171-72 (S.D.N.Y. 1984)). The federal courts do not "enforce trademark rights that exist only under foreign law." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 628 (4th Cir. 2003) See *Baig v. Coca-Cola Co.*, Case No. 08 C 4206 at *10-11 (N.D. Ill., May 27, 2009) ("plaintiffs ownership of the Canadian trademark to "Naturally Zero" does not grant them the exclusive right to use and enforce that trademark in the United States courts.") see also *Int'L Bancorp v. Societe Des Bains De Mer*, 329 F.3d 359, 385 (4th Cir. 2003) ("Such foreign use has no effect on U.S. commerce and cannot form the basis for a holding that appellant has priority here. The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme."); *La Societe Anonyme des Parfums Le Galion v. Jean Patou*, 495 F.2d 1265, 1270 n. 4 (2d Cir.1974) ("[I]t is well settled that foreign use [of a trademark] is ineffectual to create trademark rights in the United States.").

Not only does foreign use of a trademark not create rights in the United States for the foreign trademark holder but "Knowledge of a foreign use does not preclude good faith adoption and use in the United States." *Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1570 (Fed.Cir.1990) It is well established that mere knowledge of the foreign use of a mark does not establish bad faith. See, e.g., *Int'l Bancorp, LLC,* 329 F.3d 386 n. 5. ("Even if the plaintiff companies knew of SBM's use of its foreign mark in connection with services rendered in Monaco, this does not render the plaintiff companies bad-faith users of the mark in the United States or preclude them from using the mark in the United States."); *Person's Co., Ltd.,* 900 F.2d

1570 ("[A]n inference of bad faith requires something more than mere knowledge of prior use of a similar mark in a foreign country."); *Buti v. Impressa Perosa*, S.R.L., 935 F.Supp. 458, 473 (S.D.N.Y.1996) ("Impressa Perosa has not established Buti's bad faith merely by asserting Buti's knowledge of Impressa Perosa's prior use of the Fashion Cafe name in Italy."). Counter-Defendants have pled no set of facts in relation to the creation or adoption of the Giraffe Mark by Counter-Plaintiff that might lead to an inference of bad faith sufficient to support an exception to the general rule.

Finally, Counter-Defendants point to certain statements in Counter-Plaintiff's application to register the Giraffe Mark with the USPTO that they allege are untrue as a basis for their defense of *in pari delicto*. [Doc. 332 at 20] The *in pari delicto* doctrine applies only "to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Packers Trading Co. v. CFTC*, 972 F.2d 144, 148 (7th Cir. 1992) "The bad conduct constituting unclean hands must involve fraud, unconscionability or bad faith toward the party proceeded against, and must pertain to the subject matter involved and affect the equitable relations between the litigants." *Int'l Union, Allied Indus. Workers of Am., AFL-CIO v. Local Union 589, Allied Indus. Workers of Am., AFL-CIO*, 693 F.2d 666, 672 (7th Cir. 1982) Counter-Plaintiff comes to the Court an innocent seeking to enforce his legitimate trademark rights. Yet even, assuming the truthfulness of Counter-Defendants' allegations, such unrelated matters cannot support an *in pari delicto* defense. "Ordinarily, the clean hands doctrine only applies when there is a direct nexus between the bad conduct and the activities sought to be enjoined." *Id*. "Unless courts insist on a tight connection between the object of the injunction and the misconduct of the plaintiff, suits for injunction will bog down in all sorts of collateral inquiries." *Shondel v. McDermott*, 775 F.2d 859, 869 (C.A.7 (Ind.), 1985). The *in pari delicto* doctrine, as Counter-Defendants here suggest,

12

"is not to be used as a loose cannon, depriving a plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.,* 780 F. 2d 589, 601 (7th Cir. 1986)

In addition, "[W]here the law invoked by plaintiff is really for the protection of the public, unclean hands is not a defense. That is, if the evidence shows that plaintiff is engaging in inequitable practices, but defendant is also guilty of the unfair competition charged, an injunction should be granted..." *Redbox Automated Retail, LLC v. Xpress Retail LLC*, Case No. 17-cv-5596 at *10 (N.D. Ill., Feb. 20, 2018) citing J. Thomas McCarthy, 6 McCarthy on Trademarks & Unfair Competition § 31:53 (5th ed.) "And the defense is particularly disfavored where the defendant could challenge the plaintiff's conduct through a counterclaim or separate suit." *Id. at 10*. Here, as in *Redbox*, Counter-Plaintiff's suit seeks to protect the public from false advertising through prosecution of a false designation of origin claim under 15 U.S.C. § 1125(a). [Doc. 34] Moreover, the instant case was initiated on July 6, 2019 by Counter-Defendants' submission of allegations that include that Counter-Plaintiff's use of the Giraffe mark creates a false designation of origin claim under 15 U.S.C. § 1125(a), [Doc. 3] thus stipulating to the fact that any alleged inequitable conduct can, and is, being pursued through a separate suit. [Doc. 314] Counter-Defendants' asserted sixth affirmative defense *in pari delicto* thus fails as a matter of law.

   c) **Grant of the Instant Motion to Strike Removes Unnecessary Clutter From the Case and is Thus in the Interest of Judicial Efficiency**

Counter-Plaintiff acknowledges that generally, motions to strike are disfavored. *Heller Fin., Inc.*, 883 F.2d 1294. However, such motions are not disfavored where they remove "unnecessary clutter" from the litigation. *Id*. at 1294 (noting the general rule that motions to strike are disfavored, but affirming the district court's decision to strike the defendant's

13

affirmative defenses where those defenses were legally insufficient and consisted of "nothing but bare bones conclusory allegations"); see also *Davis v. Elite Mortgage Servs.*, 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009) (it is entirely appropriate for the court "to strike affirmative defenses that add unnecessary clutter to a case.") Ultimately, the decision whether to strike material is within the district court's discretion. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992). Counter-Plaintiff respectfully submits that the exercise of discretion to strike Counter-Defendants' challenged affirmative defenses is proper in this instance and is in the interest of judicial efficiency and the prompt resolution of both parties' claims.

### IV. CONCLUSION

Based on the foregoing, Counter-Plaintiff Zhou Wenbo respectfully requests that the Court strike Counter-Defendants' first, second, third, fourth and sixth affirmative defenses. Counter-Plaintiff will timely address Counter-Defendants' fifth affirmative defense via an appropriate motion.

Respectfully submitted this 22nd day of September, 2020.

/s/ L. Ford Banister, II
Bar No. 5446539
Ford Banister IP
244 5th Avenue, Ste. 1888
New York, NY 10001
Email: ford@fordbanister.com
*Attorney for Defendants and
Counter-Plaintiff Zhou Wenbo*

14