**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HANGZHOU AOSHUANG E-COMMERCE CO, LTD. | ) | |
| | ) | |
| | ) | Case No. 1:19-cv-04565 |
| Plaintiff, | ) | |
| | ) | Judge Martha M. Pacold |
| v. | ) | |
| | ) | Mag. Judge Jeffrey Cole |
| ZHOU WENBO, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |
| | ) | |
| ZHOU WENBO, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HANGZHOU AOSHUANG E-COMMERCE CO., LTD., WANG HOUBING AND DONGDONG ZHAO | ) | |
| | ) | |
| | ) | |
| | ) | |
| Counter-Defendants. | ) | |
| ——————————————— | ) | |

**COUNTER-PLAINTIFF AND DEFENDANT ZHOU WENBO'S
<u>MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION FOR SANCTIONS</u>**

**TABLE OF CONTENTS**

I.  BACKGROUND AND RELEVANT PROCEDURAL HISTORY ………………….…...7

II.  SUMMARY OF THE ARGUMENT ………………………..............…………………...9

III.  LOCAL RULE 37.2 COMPLIANCE STATEMENT …….............…………………….10

IV.  ARGUMENT ……..............……………………...…….............……………………10

    a.  In First Obtaining and Then Attempting to Maintain Preliminary Injunctive Relief, Plaintiff Misrepresented the Identity and Nature of its Own Business and of Defendants ……..........……………………..……….............………………10

    i.  Plaintiff Falsely Held Out That it Operated and Had Secured Trademark Rights Through a Single Ecommerce Store on the Wish.com Platform When It in Fact Operated Sixty Such Stores …………..…….............………………11

    ii.  Plaintiff Filed Suit and Proceeded Against at Least Four Ruse Defendants That are Actually Owned and Operated by Plaintiff and its Principals …………14

    iii.  Plaintiff Suppressed Evidence Showing That, at All Times Relevant, it Was in Fact Aware of the Location and Identity of Zhou Wenbo ……………….…………14

    b.  No Sanction Other than Dismissal of Plaintiff's Claims with Prejudice, the Striking of its Answer to Zhou Wenbo's Counterclaim and an Award of Attorney Fees to Zhou Wenbo Will Sufficiently Serve to Punish and Deter Plaintiff's Outrageous Litigation Misconduct ……………..…………………17

    i.  Plaintiff's Use of Ruse Defendants Alone Demands Dismissal ………………18

    ii.  Requested Sanctions May Be Imposed Pursuant to the Inherent Powers of the Court ……….…..……………………..…….…..………………..…….............21

    iii.  Requested Sanctions May Be Imposed Pursuant to Fed.R.Civ.P. 37 ………....…25

    iv.  Requested Sanctions May Be Imposed Pursuant to Fed.R.Civ.P. 26(g) ………...26

    v.  Requested Sanctions May Be Imposed Pursuant to Fed.R.Civ.P. 41(b) ………...30

V.  CONCLUSION………………………………………………………………………..45

# TABLE OF AUTHORITIES

## Cases

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ……………………………………………18, 21

*Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 906–07 (N.D. Ill. 2017)…………………………………………………...…………………18, 21

*Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787 (7th Cir. 2009) ……………...18, 21

*Dotson v. Bravo*, 321 F.3d 663 (7th Cir. 2003) …………………………………………..19, 20, 25

*Barnhill v. United States*, 11 F.3d 1360 (7th Cir. 1993)……………………………….………...20

*Zocaras v. Castro*, 465 F.3d 479 (11th Cir. 2006)……………………………………………...20

*Kings v. Smith*, 09-cv-2227 (C.D. Ill. Dec. 15, 2010) ……………………………………………20

*Aguilar v. United Floor Crew, Inc.*, No. 14-CIV-61605-BLOOM/Valle, at *23-24 (S.D. Fla. May 20, 2015)………………………………………………………….…………………………20

*Rodriguez v. Bollinger*, 985 So. 2d 305 (La. Ct. App. 2008) ………………………………...20

*Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397 (7th Cir. 2015) …………………………21, 22

*Twyman v. S&M Auto Brokers*, No. 16 C 4182 at *10-11 (N.D. Ill. Mar. 28, 2018) …..………22

*Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 649 F.3d 539 (7th Cir. 2011) ……….22

*Allen v. Chicago Transit Auth.*, 317 F.3d 696 (7th Cir. 2003) …………………………………22

*Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305 (7th Cir. 2002) ……….……………..21

*Ridge Chrysler Jeep, LLC v. Daimler Chrysler Financial Services Americas LLC*, 516 F.3d 623 (7th Cir. 2008)………………………………………………………………….……………22

*Ayoubi v. Dart*, No. 14-2964, at *5 (7th Cir. Mar. 3, 2016) …………………………………23

*Mat. of Mahurkar Dou. Lumen Hemodialysis Cath.*, 140 B.R. 969, 975 (N.D. Ill. 1992) ……....23

*Maine Audubon Soc. v. Purslow*, 907 F.2d 265 (1st Cir. 1990) ……………………………....23

*Time Warner Entm't Co. v. Does*, 876 F. Supp. 407 (E.D.N.Y. 1994) …………..…………....23

*Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063 (7th Cir. 2000) ………..…………..…......24

*Tiverton Bd. of License Comm'rs v. Pastore*, 469 U.S. 238, 240, 105 S.Ct. 685, 83 L.Ed.2d 618 (1985) …………..………….…..………..….……………..……..………..…......24

*Wildcat Enters., LLC v. Weber*, 322 F.R.D. 306 (N.D. Ill. 2017) ………..……………..……..25

*Elliot v. Mission Trust Servs.*, LLC, 82 F.Supp.3d 829 (N.D. Ill., 2015) ……..………..……..25

*In re Liotti,* 667 F.3d 419 (4th Cir. 2011)……………..………..……..………..……..25

*Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175 (7th Cir. 1987) ……..………..……..25

*Colyer v. City of Chicago*, No. 12 C 04855, 2016 U.S. Dist. LEXIS 40, at *86-101 (N.D. Ill. Jan. 4, 2016) ……………..……………..……………..……………..……………..……………..27

*Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398 (7th Cir. 1998) ……..……..………..……..28

*Tec-Air v. Nippondenso Mfg. USA*, No. 91 C 4488, 1994 U.S. Dist. LEXIS 2026, at *25-27 (N.D. Ill. Feb. 24, 1994)     ……..………..……..……..………..……..……..……..……..28

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573 (7th Cir. 2019)   .28

*DR Distribs., LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324 (N.D. Ill. Jan. 19, 2021) ……..
……………………………………………………………………28-9, 44

*PDX Pro Co. v. Dish Network Serv.*, LLC, 311 F.R.D. 642 (D. Colo. 2015) ……………..…..28

*Delivermed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616 (7th Cir. 2013) ……………..…..28

*Pantry Queen Foods v. Lifschultz Fast Freight*, 809 F.2d 451 (7th Cir. 1987)……………….....29

*Rojas v. Town of Cicero*, 775 F.3d 906 (7th Cir. 2015) ………………..………………......30, 31

*Ball v. City of Chicago*, 2 F.3d 752 (7th Cir. 1993) …………………..……………….....30

*Collier v. SP Plus Corp.*, 889 F.3d 894 (7th Cir. 2018)   …………..……………………….....30

*McMahan v. Deutsche Bank AG*, 892 F.3d 926 (7th Cir. 2018) ...……..……..………..30, 31, 41

*Fuery v. City of Chicago*, 900 F.3d 450 (7th Cir. 2018)…..……..……………..………31, 42

*Jones v. M/A Mgmt. Corp.*, 773 F. App'x 844 (7th Cir. 2019)  …………………………….....31

*Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557 (7th Cir. 2011) ……..…………………….....31

*Monco v. Zoltek Corp.*, 2019 WL 4686547 (N.D. Ill. Sept. 26, 2019) …………………………32

*In re Thomas Consolidated Indus., Inc.*, 456 F.3d 719 (7th Cir. 2006) …………..…………..33

*Bd. of Trs. of Pipe Fitters' Ret. Fund v. Commercial Cooling & Heating, Inc*, No. 13 C 7731 (N.D. Ill. May 28, 2019) …………….………………………………………..34

*Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 75 (7th Cir. 2015)…………………………….....35

*Tolliver v. Northrop Corp.*, 786 F.2d 316 (7th Cir.1986) ……..…………………………………....35

*Linville v. Rivard*, 41 U.S.P.Q.2d 1731 (T.T.A.B. 1996) ……..…………………………………....35

*La Societe Anonyme des Parfums Le Galion v. Jean Patou*, 495 F.2d 1265 (2d Cir.1974)...…...35

*Mother's Restaurants Inc. v. Mother's Other Kitchen, Inc.*, 1983 WL 51992, 218 U.S.P.Q. 1046 (1983)…………....…..………………………...………...…………..………………………....35

*Stagecoach Properties, Inc. v. Wells Fargo & Co.*, 1978 WL 21236, 199 U.S.P.Q. 341 (1978) ...35

*Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883 (7th Cir., 2000)……………………....38

*Brownmark Films, LLC v. Partners*, 682 F.3d 687, 2012 Copr.L.Dec. P 30270, 102 U.S.P.Q.2d 1974, 40 Media L. Rep. 1821 (7th Cir., 2012) ……..…………………………………...38

*Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017) …………………...39

*Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*, No. 18-3202 (7th Cir. June 16, 2021) 39

*Design Basics, LLC v. Signature Constr., Inc.*, No. 19-2716 (7th Cir. Apr. 23, 2021) ………...39

*Energy Intelligence Grp. v. Exelon Generation Co.*, Case No.: 20-cv-3983 (N.D. Ill. Apr. 21, 2021) ………………...…..………………………...………...…………..………………39

*Anderson v. United Parcel Serv.*, 915 F.2d 313 (7th Cir. 1990)…………...……………………41

*Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) ……...……………………………………42

*In re Snyder*, 472 U.S. 634 (1985) ……...………...…..……………...…..……………………42

*Harrington v. City of Chicago*, 433 F.3d 542 (7th Cir. 2006)…...…………...……………………42

*In re Nora*, 778 F.3d 662 (7th Cir. 2015) ...…...………...…..………………...…..………………42

*Rivera v. Drake*, 767 F.3d 685 (7th Cir. 2014)…...…...……………………………………………42

*Wiese v. Community Bank of Cent*, 552 F.3d 584 (7th Cir. 2009)   ……...…………...…………42

*Square One Entm't Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, No. 20 C 5685 (N.D. Ill. Apr. 5, 2021)………...…...…..………………………...…..………………42

*People ex rel. Karlin v. Culkin*, 248 N.Y. 465 , 162 N.E. 487 (1928) (Cardozo, C.J.) …………...46

**Rules and Statutes**

Fed.R.Civ.P. 4(f)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed.R.Civ.P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed.R.Civ.P. 11(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ABA Model Rule 3.3(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Local Rule 83.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ABA Model Rule 8.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ABA Model Rule 3.3(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ABA Model Rule 3.3(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Ill. R. Prof. Conduct Rule 3.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed.R.Civ.P. 37(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed.R.Civ.P. 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed.R.Civ.P. 26(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-6

Fed.R.Civ.P. 26(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed.R.Civ.P. 37(b)(2)(A)-(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed.R.Civ.P. 37(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed.R.Civ.P. 37(b)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed.R.Civ.P. 26(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-8, 30

Fed.R.Civ.P. 26(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Fed.R.Civ.P. 26(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Fed.R.Civ.P. 26(g)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29-30

Fed.R.Civ.P. 41(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-1

## MEMORANDUM OF LAW

## I.     BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Plaintiff Hangzhou Aoshuang E-Commerce Co., Ltd (hereinafter, "HAECO" or "Plaintiff") filed the instant civil action on July 6, 2019, alleging false designation of origin, violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA"), and copyright infringement. [Doc. 3] Plaintiff amended its complaint on July 8, 2019. [Doc. 7] On the same day, Plaintiff moved ex parte for a temporary restraining order to include a temporary injunction against unauthorized use of intellectual property, an order freezing funds in defendants' financial accounts and expedited discovery. [Doc. 8] Plaintiff further moved ex parte for leave to serve defendants electronically pursuant to Fed. R. Civ. P. 4(f)(3). [Doc. 12] The judge originally assigned to the case, the Honorable Virginia Kendall, granted Plaintiff's *ex parte* motions on July 10, 2019. [Docs. 28, 29] On July 22, 2019, Judge Kendall granted Plaintiff's request to extend the TRO until August 6, 2019. [Doc. 33]

On July 30, 2019, Plaintiff moved to convert the TRO to a preliminary injunction. [Doc. 34] On August 5, 2019, undersigned counsel appeared on behalf of nine defendants. [Doc. 37] Judge Kendall entered a preliminary injunction order but excluded the defendants represented by undersigned counsel. [Docs. 42, 43] Following the hearing on August 6, 2021, Plaintiff moved for a temporary restraining order to remain in effect while the parties completed briefing on the motion for preliminary injunction. [Doc. 40] Over their objection, Judge Kendall granted the motion for a continuing TRO as to these defendants on August 12, 2019. [Doc. 46]

Defendant/Counter-Plaintiff Zhou Wenbo[1] (hereinafter, "Defendant" or "Zhou Wenbo") appeared on August 12, 2019. [Doc. 47] On August 13, 2021, Zhou Wenbo moved to vacate the preliminary injunction. [Doc. 55] Judge Kendall denied the motion to vacate on August 14, 2019. [Doc. 63] On August 22, 2019, Zhou Wenbo again moved to vacate the preliminary injunction order. [Doc. 71] On August 23, 2019, the case was reassigned from Judge Kendall and placed on this Court's docket. Due to the reassignment and because this Court was not hearing cases, Zhou Wenbo sought to have Judge Sharon Johnson Coleman, sitting as emergency judge, take jurisdiction over the case. [Doc. 77] On August 28, 2019, Judge Coleman declined the request to resolve the motion to vacate, [Doc. 71] but referred the case to the magistrate for discovery supervision. [Docs. 84, 85] Plaintiff ultimately submitted its response to Zhou Wenbo's motion to vacate on November 19, 2019. [Doc. 189] On December 17, 2019, Zhou Wenbo moved to expedite decision on the motion to vacate. [Doc. 215] The Court granted Zhou Wenbo's motion to expedite on December 20, 2019, setting an expedited briefing schedule. [Doc. 223] Following this round of briefing, the Court reduced the asset restraining order to $200,000 on January 10, 2020, [Doc. 236] and then eliminated it entirely on January 17, 2020. [Doc. 244]

Briefing continued as to the propriety of the continuation of preliminary injunctive relief as to use of items covered by the Plaintiff's purported trademark and copyright. [Docs. 248, 258] On July 16, 2020, this Court referred outstanding matters related to the preliminary injunction to the magistrate for issuance of a report and recommendations. [Doc. 316] On July 24, 2020, the

---

[1] Zhou Wenbo is the owner of Defendants No. 124-qixing; Def. No. 146-Star star in the sky; Def. No. 168--william&jack; Def. No. 41--fashion-shop113; Def. No. 186--zagoo; Def. No. 40--fashion-shop112; Def. No. 11--aztuckers; Def. No. 185--yuzebaby; Def. No. 30--dongyang743; Def. No. 39--ZOGAA3 Store; Def. No. 56--Greatmen Store; Def. No. 28--zoggaofficial store; Def. No. 82--ZOGAA SIX Store; Def. No. 25--ConvenientYourLife; Def. No. 180--yangxinyuan; Def. No.55--Goodgoods8; Def. No. 173--Xiao wu big yards shop; Def. No.44--fengzifei; Def. No. 45--fengzihyt-4; Def. No. 134--Shirley Store; Zhou Wenbo (hereinafter, the "Zhou Wenbo Defendants")

magistrate issued a report and recommendations in which he found that Plaintiff has no likelihood of success on the merits of any of its claims and that the preliminary injunction should be vacated. [Doc. 323] On August 24, 2020, Plaintiff submitted its objections to the magistrate's report and recommendation. [Doc. 329] Following completion of briefing, [Docs. 333, 335] this Court, on June 3, 2021, overruled Plaintiff's objections to the report and recommendation, adopted it and vacated the preliminary injunction order. [Doc. 357] Zhou Wenbo now presents the instant motion for sanctions.

## II.  SUMMARY OF THE ARGUMENT

The instant case is a fraud perpetrated, through Plaintiff, by two failed businessmen, Houbing Wang and DongDong Zhao, for the purpose of utilizing the broad asset restraining orders typically issued in intellectual property actions brought against overseas ecommerce entrepreneurs in this judicial district to extort funds from a successful businessman, personally known to both, Zhou Wenbo. In first obtaining and then attempting to maintain preliminary injunctive relief, Plaintiff misrepresented the identity and nature of its own business and of Defendants. Specifically, Plaintiff falsely held out that it operated and had secured trademark rights through a single ecommerce store on the Wish.com platform when it in fact operated sixty such stores. Most egregiously, Plaintiff filed suit and proceeded against at least four ruse defendants that are actually owned and operated by Plaintiff and its principals. Plaintiff suppressed evidence showing that, at all times relevant, it was in fact aware of the location and identity of Zhou Wenbo. No sanction other than dismissal of Plaintiff's claims with prejudice and the striking of its answer to Zhou Wenbo's counterclaim will sufficiently serve to punish and deter Plaintiff's outrageous litigation misconduct. Zhou Wenbo is further entitled to an award of costs and attorney fees from Plaintiff, its principals and its counsel.

### III. LOCAL RULE 37.2 COMPLIANCE STATEMENT

A LR. 37.2 conference took place via Zoom on May 27, 2020 at 10:00 AM which was attended by Mr. Adam Urbanczyk and Ms. Carla Buterman for Plaintiff and undersigned, L. Ford Banister, II, for Defendants. [Doc. 271-1 at 9] Following the conference, undersigned sent an email to memorialize the matters discussed to which Mr. Urbanczyk replied, with undersigned sending a brief response to Mr. Urbanczyk's reply. [Id.; 271-1 at 32-33] In summary, upon being informed that Plaintiff's document production of March 17, 2020 showed that it operated through sixty rather than a single ecommerce store and that Plaintiff had proceeded through four ruse defendants, Mr. Urbanczyk claimed not to know that these documents had been produced to Defendants and described Plaintiff's production as "just a bunch of stuff we got from the Plaintiff." [Id.] There was no response when undersigned pointed out that Plaintiff had made multiple references to these documents in its written response to specific requests for production of documents which were signed off on by Mr. Urbanczyk and Ms. Buterman. [Id.; 271-5] On May 28, 2020, undersigned sent a detailed letter again reviewing outstanding discovery issues and further memorializing the LR. 37.2 conference. [Doc. 271-1] Counsel for Zhou Wenbo negotiated in good faith the discovery disputes set out herein. Zhou Wenbo respectfully submits that the record shows that counsel for Plaintiff did not negotiate in good faith. To the extent that compliance with LR 37.2 is necessary to any of the relief requested herein, Zhou Wenbo respectfully submits that the issues were left unresolved following the conference of May 27, 2020 due to no fault of his own and in spite of his best efforts.

### IV. ARGUMENT

**a.** **In First Obtaining and Then Attempting to Maintain Preliminary Injunctive Relief, Plaintiff Misrepresented the Identity and Nature of its Own Business and of Defendants**

> **i. Plaintiff Falsely Held Out That it Operated and Had Secured Trademark Rights Through a Single Ecommerce Store on the Wish.com Platform When It in Fact Operated Sixty Such Stores**

On February 13, 2020, Zhou Wenbo sent a detailed letter to Plaintiff setting out deficiencies in its discovery responses. [Doc. 271-1 at 11-28] Zhou Wenbo addressed Plaintiff's continued failure to cure these deficiencies as well as additional areas of concern in a second letter on May 28, 2020. [Id. at 6-8] Both dispatches address the Plaintiff's response to Defendants' Interrogatories 16 and 17. First, Zhou Wenbo notes that Interrogatory 16 is as follows:

> Identify each and every domain name, online marketplace account and storefront Used by You, the registered owner, actual operator, and the company that employs such persons.

> [Unquote]

> Plaintiff responded as follows:

> Answer. All advertising, promotional and marketing materials created by or for YOU related to the allegedly infringed product(a) YOU identified in YOUR response to Interrogatory No. 1.

> [Unquote]

> [Id. at 6-8, 16-17]

On its face, Plaintiff's response is incoherent and makes no logical sense whatsoever. Defendants' Interrogatory 1 asked that Plaintiff "IDENTIFY the "Infringing Giraffe Products" that YOU contend were offered for sale by the DEFENDANTS, as alleged in Paragraphs 26, 29, 31-33, 36-38 and 41 of YOUR COMPLAINT." [Id.] Plaintiff responded that it directs Defendants to document production HZ0001-HZ0165." One question simply has no bearing on the other.

Second, Defendants' Interrogatory No. 17 is as follows:

Identify each listing You, the registered owner, actual operator, and the
company that employs such persons have made or used on websites
or online marketplace accounts offering items bearing or using the GIRAFFE
MARK and/or GIRAFFE WORKS for sale, either alone or included with
another product, from January 2013 to present, including identifying the following
information for each and every listing:

a. The website or online marketplace on which the listing was posted;
b. The date the listing was posted;
c. The specific products or goods offered for sale;
d. The sale price of the specific products or goods offered for sale;
e. The URL at which the listing appears;
f. The identity and all known contact information and location of the supplier, including
   any Internet Store URLs, or manufacturer that the specific products or goods were
   purchased from.

[Id.] [Unquote]

In response, Plaintiff provided no response whatsoever but posited a number of
boilerplate objections in addition to its nine "General Responses and Objections." [Doc. 271 at ¶
15; 271-11 at 10] Throughout this case, until submission of its response to Zhou Wenbo's
counterclaim on August 31, 2020, [Doc. 332 at ¶10] Plaintiff has not corrected Defendants and
has itself maintained that it sells items bearing the GIRAFFE MARK and has purportedly
established trademark rights through a single store on the Wish platform known as H-Cool
Trading Co. [Docs. 3 at ¶19; 7 at ¶19; 11 at ¶10; 82 at 4; 189 at 5; 232 at 11 FN.3, 12; 240 at
3-4, FN.2] Plaintiff even went so far as to accuse Zhou Wenbo of discovery abuse for inquiring
into the stores that Plaintiff sells items bearing the GIRAFFE MARK through, *to wit*:

> Turning first to the interrogatory at issue (No. 17), Defendants were seeking
> information about the online storefront operated by Plaintiff. However,
> Defendants clearly already possessed that information. On August 27, 2019,
> Defendants state, "Plaintiff operates a completely non-descript storefront
> on the Wish platform known as 'Hcool Trading Co.' which offers for sale
> a total of fourteen items, one of which is the Giraffe Shirt." [Dkt. 82 at 4,
> which also lists the URL for the Wish store]. Accordingly, Plaintiff's objections
> that the request is "vexatious and cumulative" and "seeks information already
> in the possession of or otherwise available to Defendants" were well-founded.
> If Defendants believed that Plaintiff's response was inadequate, they could have

used the mechanism built into the Federal Rules of Civil Procedure to request that this Court compel Plaintiff to adequately respond. Instead, Defendants are attempting to use "deception and surprise" to rely on the alleged inadequacies now to defend against a preliminary injunction. While Defendants' arguments are unclear as to Interrogatory No. 16, the same analysis applies.

[Unquote] [Doc. 258 at 10-11]

Based on Plaintiff's production of extensive sales records from at least sixty different stores on the Wish platform as well as <u>Plaintiff's Amended Response to Defendants' First Set of Requests for Production of Documents</u>, submitted under the signature of its lead counsel, Mr. Urbanczyk, on March 17, 2020 verifying that Plaintiff relies on these documents to support the averments of its Complaint, it is established that Plaintiff does business through many different stores on the Wish platform. [Doc. 271-5 at 4, 9-17] Plaintiff's facile evasion of Interrogatory No. 16 and its self-contradictory objection that it is overly burdensome, vexatious and cumulative to provide the information requested in Interrogatory No. 17 where Plaintiff claims to have established trademark rights through sales via a single online store that it expressly states Defendants have been made aware of are now shown to be intentional attempts to evade providing certain relevant and discoverable information to Defendants. Notably, via letter of July 1, 2020, Plaintiff claims to have updated its interrogatory responses on March 20, 2020. [Doc. 374-1 at 2-3; 374-2 at 2; 374-3] However, Zhou Wenbo did not receive any amended interrogatory responses from Plaintiff at that time. In response to separate requests from Zhou Wenbo, made on July 2, 3 and 4, 2020, Plaintiff finally, on July 7, 2020, responded to provide Zhou Wenbo with its purported second amended responses to Plaintiff's first interrogatories. [Doc. 374-2 at 2] Plaintiff indicated that "We are looking into this on our end," but never responded to Zhou Wenbo's request, renewed on June 19, 2021, to forward the email via which Plaintiff allegedly served these amended responses. [Id. at 2] Zhou Wenbo notes that at a

conference on May 27, 2020, Plaintiff's counsel claimed to know nothing of the fact that, contrary to its repeated declarations, cited above, Plaintiff in fact does business through not one but at least sixty stores on the ecommerce platform alone. [Doc. 271-1 at 32] In its response to Zhou Wenbo's Counterclaim, Plaintiff admitted, on August 31, 2020, that it "has been engaged in ecommerce through at least..." sixty ecommerce stores. [Doc. 332 at ¶10]

### ii. Plaintiff Filed Suit and Proceeded Against at Least Four Ruse Defendants That are Actually Owned and Operated by Plaintiff and its Principals

Among the Wish stores for which Plaintiff belatedly produced extensive sales records are the following:

| No. | Store Name | Store URL | listing URL |
|---|---|---|---|
| 60 | haiyangliu | https:/ www.wish.com/mer chant/Sb61587008596d31a1 005ba9 | https:/ /www.wish.com/product/5cb962e7 0c6b5639274a81b9 |
| 63 | hangzhouchengqi dianzishangwuyouxiang ongsi | https:/ www.wish.com/mer chant/566441cef50d0f23e87 0261c | https:/ /www.wish.com/product/595c4ae3 d479ed70fcc701a3 |
| 72 | Hot SummerDream 2018 | https:/ www.wish.com/mer chant/Sb857c96b0c3fa29f6a 682d8 | https:/ /www.wish.com/product/5cbc5f55 a866555f5e8d9038 |

[Docs. 271 at ¶¶ 17-19; 271-13; 271-14; 271-15]

In an update to Plaintiff's written response to Defendants' requests for production of documents, dated March 17, 2020 and bearing the signature of its lead counsel, Mr. Urbanczyk, Plaintiff referred to the specific Bates ranges containing production for the above stores, also listed in Schedule A as Defendants 60, 63 and 72, multiple times. [Docs. 271 at ¶ 8; 271-5 at 4, 9-17] As shown, these Defendants were dismissed together on August 15, 2019. [Doc. 61] In addition, on or about March 16, 2020, Plaintiff produced communications with the platforms and

payment processors subject to injunctive relief in this case. [Doc. 271 at ¶ 9] Among the communications produced is HZ307-HZ309 which shows that the Payoneer account related to Defendant No. 65, Hatoat, registered with the email address 1263555140@qq.com, is owned by Hangzhou Lingqin Information Technology Co. Ltd. The contact person is shown as Dongdong Zhao. [Id. at ¶ 10; 271-6 at 4] Records obtained from the National Enterprise Credit Information Publicity System maintained by the Chinese State Administration for Market Regulation confirm that Hangzhou Lingqin Information Technology Co. Ltd. is owned and operated by DongDong Zhao and Wang Houbing, Plaintiff's principals. [Doc. 276 at ¶ 12; 271-4] Defendant No. 65, Hatoat, was dismissed on August 20, 2019. [Doc. 66] Via letter of July 1, 2020, and in its answer to Zhou Wenbo's Counterclaim, Plaintiff admits that it did, in fact, sue four stores that it itself owns and then dismissed the case against itself almost a month after it served itself. [Docs. 374-1 at 3; 332 at ¶27]

### iii. Plaintiff Suppressed Evidence Showing That, at All Times Relevant, it Was in Fact Aware of the Location and Identity of Zhou Wenbo

As Plaintiff acknowledged in its briefing in support of the continuation of the preliminary injunction "In the course of bringing the instant case, Plaintiff ordered products from defendants' stores using their listings identified as exhibiting infringing versions of the Giraffe Mark and Giraffe Work." [Doc. 258 at 2-3 citing Docs. 16-26] Docs. 16-26 are attachments to the Declaration of DongDong Zhao (hereinafter, "the First Zhao Declaration") regarding which Zhao swore as follows:

> I perform and supervise investigations related to Internet-based infringement of the Giraffe Mark. Our investigations show that Defendants are using the Defendant Online Stores to sell infringing Giraffe Products from China or other countries to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the Defendant Online Stores and determined that infringing Giraffe Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through

visual inspection of the products listed for sale on each Defendant Online Store, the price at which the infringing Giraffe Products were offered for sale, other features commonly associated with online marketplace listings selling infringing products such as product imagery and listing layouts, and because Defendants and their Defendant Online Stores do not conduct business with HAECo and do not have the right or authority to use the Giraffe Mark for any reason. In addition, each Defendant Online Store offered shipping to the United States, including Illinois. **True and correct copies of screenshot printouts showing the active Defendant Online Stores reviewed and infringing Giraffe Products ordered and received into this forum are attached as Exhibit 2.**

[Unquote] [Emphasis Added] [Doc. 11 at ¶ 15]

Upon examination, Plaintiff did not attach photographs of allegedly infringing products delivered into this judicial district to the First Zhao Declaration. On or about January 23, 2020, Plaintiff responded to Defendants' first requests for production of documents by producing two-hundred and four (204) pages of documents, the first one hundred and sixty-five (165) pages of which consist of screenshots of allegedly infringing products sold through Defendants' online stores and those of defendants that have now been dismissed. [Doc. 271-2, HZ0001-HZ0165] Therein, Plaintiff provided screenshots of delivered products that include images of the envelopes in which the items arrived for Defendant Nos. 15_babyzaima, 33_Encantador KK Store and 182_Your Parcel Store, Defendant stores that are not movants on the instant motion. [Id. at 12-13, 44-5, 155-6] In a brief in support of the continuation of the preliminary injunction, filed on February 20, 2020, Plaintiff conceded that between the parties Defendants had first used the Giraffe Mark in U.S. commerce and asserted a new theory that Defendants had failed to independently establish trademark rights. [Doc. 258 at 2-6] In support of its new theory, Plaintiff attached to its memorandum, as Exhibits 4-22, photos of products purportedly delivered from each of the Defendant Online Stores with the exception of Defendants 185_yuzebaby and 30_dongyang743 whose products Plaintiff claims were not ultimately delivered or received. [Id. at 4-22] These exhibits are authenticated by the attached declaration of Plaintiff's principal,

16

Wang Houbing. [Doc. 258-33 at ¶¶ 6-24] On or about March 7, 2020, Plaintiff produced these photos to Defendants as HZ0205-HZ0285. [Doc. 271-3] At the time of service, Plaintiff informed Defendants that HZ0205-HZ0285 consisted of "new photos of the same shirts included in the declaration supporting the entry of the TRO and already disclosed..." [Docs. 271 at ¶ 7; 271-4 at 2]

Quite remarkably, photos of delivered products for Defendants Nos. 25_convenientyourlife, 28_zoggaofficialstore, 39_zogga3store, 82_zoggasixstore clearly show that Zhou Wenbo is the sender of these items. [Docs. 258-5-7; 258-14; 271-3 at 7, 9, 11, 13, 15-16, 43, 45] Zhou Wenbo utilized the tracking numbers on this belatedly produced evidence to determine the dates on which the items were delivered. The results are as follows:

| # | Store Name | Platform | Tracking# | Has a Delivery Record? | Has Zhou's Name? | Delivery Date | Docket Ref. |
|---|---|---|---|---|---|---|---|
| 1 | ConvenientYourLife | wish | LN724496668CN | Y | Y | 2019-06-03 | 258-5 |
| 2 | ZoggaOfficial Store | Aliexpress | LT786223576CN | Y | Y | 2019-06-17 | 258-6 |
| 3 | StoreZOGAA3 Store | Aliexpress | LT791192602CN | Y | Y | 2019-06-17 | 258-7 |
| 4 | zoggasixstore | Aliexpress | LT785475613CN | Y | Y | 2019-06-17 | 258-14 |

[Unquote]

[Declaration of Zhou Wenbo (hereinafter, "the Zhou Declaration, Doc. 276 at ¶¶ 5-6; 276-1]

**b.     No Sanction Other than Dismissal of Plaintiff's Claims with Prejudice, the Striking of its Answer to Zhou Wenbo's Counterclaim and an Award of Attorney Fees to Zhou Wenbo Will Sufficiently Serve to Punish and Deter Plaintiff's Outrageous Litigation Misconduct**

### i.     Plaintiff's Use of Ruse Defendants Alone Demands Dismissal

"[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation...." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (quotations omitted). "This power is 'permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court.'" *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 906–07 (N.D. Ill. 2017) citing *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 797 (7th Cir. 2009)) Plaintiff cannot deny that its conduct in this case in proceeding against at least four ruse defendant stores, listed as Defendant Nos. 60, 63, 65 and 72, is incredibly egregious misconduct that must be subject to the sternest judicial rebuke. Upon investigation, Defendants have discovered only a single circumstance in which ruse defendants have been utilized in multiparty intellectual property cases, that being in the notorious porn trolling cases centered around the defunct Chicago based firm Prenda Law for which former attorneys John Steele and Paul Hansmeir are now serving lengthy prison sentences. Both Steele and Hansmeir admitted in their respective plea agreements to utilizing one or more ruse defendants in various cases in order to secure certain advantages in litigation. [Doc. 276 at ¶¶ 11-12; 271-7; 271-8] The use of ruse defendants is also referred to in the Illinois Attorney Registration and Disciplinary Commission's *Statement of Charges Allowed by the Illinois Supreme Court and Imposing Discipline on Consent* in *In re Steele*, Commission No. 2015PR00068 (May 18, 2017). [Doc. 271 at ¶ 13; 271-9]

In assessing this course of conduct, Zhou Wenbo respectfully submits that neither he nor the Court can or should ignore the fact that there is a very strong indication that the use of ruse

18

defendants in litigation is a *modus operandi* of their counsel, Mr. Urbanczyk. In the Prenda Law porn trolling cases, Mr. Urbanczyk, on multiple occasions, appeared in state court opposite counsel for Prenda Law on behalf of one individual defendant to then agree to entry of a broad expedited discovery order on behalf of all defendants in the case. [Docs. 374-4; 374-5; 374-6] In one of these cases, counsel for one of the defendants raised that this repeated course of conduct was indicative of collusion between Prenda Law attorneys and Mr. Urbanczyk. [Doc. 374-7] These concerns were shared by Cook County Circuit Court Judge Sanjay Tailor who, in open court, inquired of the Prenda Law attorneys and Mr. Urbanczyk if they were "in bed together." [Doc. 374-8 at 6] In another Prenda Law case, a party appeared to move for a temporary restraining order, to vacate the agreed order and for a protective order where that party had contacted Mr. Urbanczyk for a consultation, chose not to hire him but then received an email from Mr. Urbanczky indicating that he had already contacted Prenda Law attorneys and negotiated a settlement on his behalf. [Doc. 374-9]  The concerns of counsel and Judge Tailor were proved to be well founded, as shown by the plea agreements and order of disbarment referenced above. [Doc. 276 at ¶¶ 11-13; 271-7; 271-8; 271-9] Is the Court to simply assume that the appearance of this set of circumstances, never seen before or after the Prenda Law cases, so far as we know, is merely coincidental in a case brought by Mr. Urbanczyk?

Where parties proceed under false names, the Seventh Circuit and other courts have held that dismissal with prejudice is appropriate. In *Dotson v. Bravo*, Plaintiff whose real name is "DeMarco Shaunte Sheppard" filed a case under a false name "Shaunte Dotson." During discovery proceedings, Defendants learned of Sheppard's true identity and filed a motion to dismiss and to impose sanctions against him. The district court dismissed the case with prejudice upon a motion to dismiss. Sheppard appealed. The Seventh Circuit affirmed the lower court's

19

decision. 321 F.3d 663, 665 (7th Cir. 2003) In affirming dismissal, the Seventh Circuit found that "'[T]here are species of misconduct that place too high a burden . . . for a court to allow a case to continue.'" *Id*. citing *Barnhill v. United States,* 11 F.3d 1360, 1368 (7th Cir. 1993). "[M]isconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court... Filing a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action." *Id*. at 668.

In *Zocaras v. Castro*, the Eleventh Circuit Court of Appeals upheld the dismissal with prejudice of a case filed under a false name. 465 F.3d 479 (11th Cir. 2006). In strong language conveying the seriousness of this particular species of misconduct, the Eleventh Circuit opined that "If, as the Bible says, '[a]n honest answer is like a kiss on the lips,' Proverbs 24:26 (N.I.V.), a pleading founded on a lie is like a kick in the gut." *Id*. at 481. "A trial is not a masquerade party nor is it a game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of uncovering his real name. We sometimes speak of litigation as a search for the truth, but the parties ought not have to search for each other's true identity." *Id*. at 484. Other Court's dealing with similar factual scenarios have followed the decisions in *Dotson* and *Zocaras*. See *Kings v. Smith*, 09-cv-2227 (C.D. Ill. Dec. 15, 2010) (dismissing case with prejudice where filed under false name); *Aguilar v. United Floor Crew, Inc.*, No. 14-CIV-61605-BLOOM/Valle, at *23-24 (S.D. Fla. May 20, 2015) ("A person cannot hide or change his identity to suit his purposes without making a mockery of those who rely upon it - here, opposing litigants and the

integrity of the judicial process itself. Plaintiff's willful misconduct is clear from the record here. No lesser sanction other than involuntary dismissal with prejudice is adequate.") *Rodriguez v. Bollinger*, 985 So. 2d 305, 308 (La. Ct. App. 2008) ("a party who files a suit under a false name and proceeds with that deception loses the right to seek judicial relief for the claims he/she was advancing.")

### ii. Requested Sanctions May Be Imposed Pursuant to the Inherent Powers of the Court

"A district court has inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). These sanctions are appropriate where a party or their counsel has practiced fraud upon the Court, acts in "bad faith by delaying or disrupting the litigation," hampers enforcement of a court order, or when a party is responsible for defiling "the very temple of justice." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (quotations omitted). "This power is 'permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court.'" *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 906-07 (N.D. Ill. 2017) (quoting *Salmeron*, 579 F.3d at 797). Due to "their very potency, inherent powers must be exercised with restraint and discretion," but "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. These powers should be invoked when "in the informed discretion of the court, neither [a] statute nor the Rules are up to the task." *Id.* at 50. This authority includes circumstances where "conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address," because "requiring a court first to apply Rules and

statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." *Id*. Therefore, "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id*. at 49. see *Twyman v. S&M Auto Brokers*, No. 16 C 4182 at *10-11 (N.D. Ill. Mar. 28, 2018)

Plaintiff respectfully submits that the Court should, both in tandem with other statutes and court rules, as set out below, and independently, invoke its inherent power to punish Plaintiff's misconduct in proceeding against four ruse defendants. Fed.R.Civ.P. 11 forbids lying in pleadings, motions, and other papers filed with the court. Rule 11(c)(2) provides that a motion for sanctions must be served on the opposing party and cannot be filed with a court until 21 days have passed from the date of service. The 21-day window provides a "safe harbor" to the alleged offending party to withdraw or correct the challenged pleading. *Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011). Here, the damage from Plaintiff's deceptive conduct has already long been done and cannot be remedied by the withdrawal of offending papers. Dismissal with prejudice is appropriate when false representations are made to the Court. see *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003); *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306-07 (7th Cir. 2002); *Ridge Chrysler Jeep, LLC v. Daimler Chrysler Financial Services Americas LLC*, 516 F.3d 623 (7th Cir. 2008).

Moreover, "[D]ismissal pursuant to the court's inherent authority can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Secrease*, 800 F.3d at 401. see also *Ayoubi v. Dart*, No. 14-2964, at *5 (7th Cir. Mar. 3, 2016) (unpublished) ("a dismissal with prejudice is an appropriate sanction for

lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary"). Zhou Wenbo respectfully submits that this is especially true where initial relief is obtained ex parte. see *Mat. of Mahurkar Dou. Lumen Hemodialysis Cath.*, 140 B.R. 969, 975 (N.D. Ill. 1992) ("Lawyers who make ex parte applications have a special duty of candor in light of the one-sided nature of the presentation."); *Maine Audubon Soc. v. Purslow*, 907 F.2d 265, 268-69 (1st Cir. 1990) ("Where counsel appears ex parte, however, the customary checks and balances do not pertain — and the court is entitled to expect an even greater degree of thoroughness and candor from unopposed counsel than in the typical adversarial setting."); *Time Warner Entm't Co. v. Does*, 876 F. Supp. 407, 415 (E.D.N.Y. 1994) ("In an ex parte proceeding, in which the adversary system lacks its usual safeguards, the duties on the moving party must be correspondingly greater."); ABA Model Rule 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.") Here, Judge Kendall was met with an ex parte application for a TRO, including an asset restraining order, that she proceeded to grant without knowing that four of the listed defendants were actually owned and operated by the Plaintiff, that Plaintiff actually does business through at least sixty ecommerce stores instead of one and that photographs of delivered products then in Plaintiff's possession showed the senders' names and addresses, including that of Zhou Wenbo.

Even more egregious is the fact that when Plaintiff's counsel undeniably knew that the repeated representations made to the Court regarding the nature and identity of its business and the correctness of the relevant interrogatory responses were false, they did nothing to apprise the Court of this fact or to withdraw these arguments. The Northern District of Illinois has adopted the ABA Model Rules of Professional Conduct. LR. 83.50. ABA Model Rule 8.4 states that it is

professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." ABA Model Rule 3.3(a)(1) commands that a lawyer "shall not knowingly... make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." ABA Model Rule 3.3(a)(3) commands that a lawyer may not offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." The Illinois Supreme Court's Rules of Professional Conduct similarly state, "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Ill. R. Prof. Conduct Rule 3.3(a). The commentary to that Rule states, "[T]he lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false." *Id*. at Cmt. 3.

This continuing duty of candor and to correct false statements of fact and law once discovered has also been adopted by the Seventh Circuit. Plaintiff's counsel had "a continuing duty to inform the Court of any development which may conceivably [have] affect[ed] the outcome of the litigation." *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067-68 (7th Cir. 2000) (citing *Tiverton Bd. of License Comm'rs v. Pastore*, 469 U.S. 238, 240, 105 S.Ct. 685, 83 L.Ed.2d 618 (1985)). It is no answer for Plaintiff to now attempt to argue that this information and evidence, addressed multiple times at brief, was not relevant or that the failure to correct these misrepresentations was harmless. In dealing with a similar failure to disclose, Judge Bucklo stated "I do not find credible the notion that counsel for the parties had no reason to believe that the facts described above might have affected my decision." *Wildcat Enters., LLC v.*

24

*Weber*, 322 F.R.D. 306, 311 (N.D. Ill. 2017. Courts in this judicial district and elsewhere have held similarly. see *Elliot v. Mission Trust Servs., LLC*, 82 F.Supp.3d 829, 834 (N.D. Ill., 2015) (assessing fees where counsel failed to apprise the court of vital facts germane to the proceedings); *In re Liotti*, 667 F.3d 419, 430 (4th Cir. 2011) (publicly admonishing attorney who failed to correct inaccuracies in a declaration submitted by his client). Generously assuming that Plaintiff's counsel was not aware of the falsity of the statements when made but only discovered as much later, it would have been an easy matter for Plaintiff's counsel to apprise the Court. Instead they chose to let these false statements stand in submissions upon which the Court ultimately relied to determine whether the preliminary injunction should remain in effect. [Docs. 323, 357] This Court should not permit such egregious misconduct to go unpunished.

### iii.    Requested Sanctions May Be Imposed Pursuant to Fed.R.Civ.P. 37

Under Rule 37(a)(3), "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(3) (2002). Rule 37(c)(1) establishes that a failure to disclose any information that is required to be disclosed under Rule 26(a) and (e)(1) can result in the imposition of various sanctions, which are listed in Rule 37(b)(2)(A)-(C). FED. R. CIV. P. 37(c)(1). Among the approved Rule 37(b) sanctions is "dismissing the action or proceeding or any part thereof." FED. R. CIV. P. 37(b)(2)(C). *Dotson* 321 F.3d at 667. *Id*. at 667. In upholding the sanction of dismissal with prejudice in *Dotson*, the Seventh Circuit relied on Fed.R.Civ.P. 37(b). *Id*. citing *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1180 (7th Cir. 1987). Here, as set out above, Plaintiff's responses to Zhou Wenbo's Interrogatory Nos. 16 and 17, seeking disclosure of the domains and listing through which Plaintiff does business were wholly evasive. [Doc. 271-11 at 8-9] It is within the Court's

discretion to dismiss Plaintiff's claim and to provide Zhou Wenbo additional relief under these circumstances.

### iv.    Requested Sanctions May Be Imposed Pursuant to Fed.R.Civ.P. 26(g)

Fed.R.Civ.P. 26(g) states, in pertinent part, as follows:

Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name-or by the party personally, if unrepresented... By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

(i)  consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(3) Sanction for Improper Certification. If a certification violates this rule without substantial justification, the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

[Unquote] [Emphasis Added]

Here, it is undisputed that when Plaintiff provided its  response to Zhou Wenbo's Interrogatory Nos. 16 and 17, the responses were not complete. [Id.] While the response to Interrogatory No. 16 was unresponsive and nonsensical, the objection to Interrogatory No. 17 was unjustified and evasive. [Id.] Moreover, at the same time it permitted these interrogatory

responses to stand, Plaintiff continued to argue to the district court that it did business through a single store on the Wish.com ecommerce platform. [Doc. 258 at 10-11] In light of Plaintiff's later disclosures, [Doc. 374-3 at 8-11] it is apparent that these responses were interposed for delay, to harass, and to increase the cost of litigation.

While there is no doubt that Plaintiff's interrogatory responses were incomplete and interposed for deception and delay, Zhou Wenbo also respectfully submits that the record strongly suggests that Plaintiff's counsel, Adam Urbanczky and Carla Buterman, knew this when the responses were submitted under their signatures. The nonsensical content of the response to Interrogatory No. 16 and the objection to responding, in a sworn interrogatory response, to a request pertaining to what Plaintiff then held out to pertain to a single Wish store [Doc. 271-11 at 8-9] speaks for itself. It is no answer for Plaintiff's counsel to claim that they actually did not know the truth of what they had repeatedly argued to the Court. Although the signature "does not require the signing attorney to certify the truthfulness of the client's responses to a discovery request," it forces an attorney to "stop and think" about discovery responses and "certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment; see also *Colyer v. City of Chicago*, No. 12 C 04855, 2016 U.S. Dist. LEXIS 40, at *86-101 (N.D. Ill. Jan. 4, 2016). The reasonable inquiry standard does not require subjective bad faith.

> [The standard] is an objective standard similar to the one imposed by Rule 11. In making the [reasonable] inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.
> Fed. R. Civ. P. 26(g), advisory committee's note to 1983 amendment (citation omitted);

see also *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 407-08 (7th Cir. 1998); *Tec-Air v.*

*Nippondenso Mfg. USA*, No. 91 C 4488, 1994 U.S. Dist. LEXIS 2026, at *25-27 (N.D. Ill. Feb. 24, 1994).

An attorney must be sanctioned for failing to conduct an objectively reasonable inquiry because of "carelessness and inattentiveness;" therefore, "even honest mistakes can be sanctionable." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 583-85 (7th Cir. 2019) (discussing objectively reasonable inquiry under Rule 11). see *DR Distribs., LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, at *194 (N.D. Ill. Jan. 19, 2021). It is for Plaintiff's counsel to explain how it is that these incomplete and evasive interrogatory responses were provided to Plaintiff under their signatures. In so doing, they should keep in mind that blind reliance on a client's representation is rarely a reasonable inquiry. *Id*. at *195 (citation omitted). This is especially true where, as here, Plaintiff's counsel knew that Plaintiff had provided information that was at least incorrect. *Id*. citing *PDX Pro Co. v. Dish Network Serv.*, LLC, 311 F.R.D. 642, 653 (D. Colo. 2015). Plaintiff's copyright registration states that Plaintiff published the Giraffe image in China on May 20, 2014 and registered it within five years on February 6, 2018. [Docs. 3-1; 314-1; 323 at 25] Yet on August 14, 2019, Plaintiff's principal, Houbing Wang, presented a sworn declaration alleging that he independently created the Giraffe Work that is included in the Amended Complaint as Exhibit 1 under Copyright Registration Number VA 2-114-217 in December 2012, thus admitting a misrepresentation to the Copyright Office that, if known, would likely have led to a denial of the application. [Doc. 60 at ¶ 5] see *Delivermed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 622 (7th Cir. 2013) citing 17 U.S.C. § 411(b)(1)(A)-(B) ("But an infringement plaintiff cannot satisfy this precondition by duping the Copyright Office into issuing a certificate of registration based on a false claim of copyright ownership. To prevent plaintiffs from abusing the registration process in this way, the Copyright

Act allows for the invalidation of registrations obtained by knowing misrepresentations of material facts.") Further, in clear contradiction to his trademark application, which shows the first use anywhere and the first use in commerce as April 2, 2015, [Doc. 52-1 at 3] Wang later claimed to have first offered shirts for sale via a Taobao store on March 4, 2013 with the item first being sold on September 26, 2013. [Doc. 60 at ¶¶ 6-7] Plaintiff's counsel should have been skeptical and on guard against additional errors or misrepresentations from a client that twice sought to change the story when it seemed to bolster its case. Moreover, knowing that their presentation as to the ecommerce stores through which Plaintiff claims to have established trademark rights was false, neither Plaintiff nor its attorneys withdrew these arguments nor did they advise the Court that the arguments upon which it would ultimately enter orders were baseless. This is wholly unacceptable and violative of the Rule. see *Pantry Queen Foods v. Lifschultz Fast Freight*, 809 F.2d 451, 454 (7th Cir. 1987) ("A court has ample support for sanctions when new filings do not reflect the full picture. D'Alterio's lawyers were not entitled to continue to assert that D'Alterio shipped the machine after discovering that it had not. Counsel also must update disclosures in discovery, on learning that the initial disclosure was not fully responsive — a duty that has never been applied to pleadings.")

Rule 26(g)(3) authorizes the court to sanction the attorney signing initial disclosures, the party the attorney represents, or both. Fed. R. 26(g)(3). "The rule contemplates that sanctions must be imposed not only on attorneys who fail to conduct a reasonable investigation, but also upon clients if they are complicit in the violation of the rule. So, when attorneys and their clients are equally culpable, they should be equally sanctioned." *DR Distribs., LLC* at *196. (citations omitted) If an attorney or party violates Rule 26(g), sanctions are mandatory, though the nature of the sanctions is left to the Court's discretion. "Rule 26(g)(3) gives the judge discretion over the

nature of the sanction but not whether to impose one... It could be money, but it also could be a formal (and public) reprimand or censure." *Rojas v. Town of Cicero*, 775 F.3d 906, 909 (7th Cir. 2015). As more fully set out below, Plaintiff's concealment of this information has multiplied the proceedings and imposed significant costs upon Zhou Wenbo. Both monetary sanctions and a formal public reprimand or censure should be imposed upon Plaintiff and the named attorneys who signed off on the interrogatory responses.

### v. Requested Sanctions May Be Imposed Pursuant to Fed.R.Civ.P. 41(b)

Under Rule 41(b), the Court may dismiss a plaintiff's case with prejudice "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b); *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993). "A Rule 41(b) dismissal is a harsh sanction appropriate only when there is a clear record of delay or contumacious conduct, or where other less drastic sanctions have proved unavailing." *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018). Because dismissing a case with prejudice "is the most severe sanction that a court may apply," the Court must carefully exercise its judicial discretion in doing so. *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 931 (7th Cir. 2018). To that end, the Seventh Circuit has directed district courts to ideally consider six factors "when entertaining a Rule 41(b) motion:"

1) the frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit,

2) the apportionment of responsibility for those failures between the plaintiff and his counsel,

3) the effect of those failures on the judge's calendar and time,

4) the prejudice, if any, to the defendant caused by the plaintiff's dilatory conduct,

5) the probable merits of the suit, and

6)      the consequences of dismissal for the social objectives of the type of litigation that the suit represents.

*Id*. at 931-32. An attorney's disciplinary history may also be relevant. See *Fuery v. City of Chicago*, 900 F.3d 450, 468 (7th Cir. 2018); *Rojas v. Town of Cicero*, 775 F.3d 906, 909 (7th Cir. 2015). In addition to the *McMahan* factors and attorney disciplinary history, the Court should consider whether those factors and any other relevant circumstances show one or more of delay, contumacious conduct, or the ineffectiveness of less drastic sanctions. See  *Jones v. M/A Mgmt. Corp.*, 773 F. App'x 844, 847 (7th Cir. 2019) (emphasizing that a Rule 41(b) dismissal is permissible when there is delay or contumacious conduct or less drastic sanctions have proven unavailing). "Ultimately, the decision to dismiss 'depends on all the circumstances of the case.'" *McMahan*, 892 F.3d at 932 (quoting *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011)).

### a)      **Analysis Under the *McMahan* Factors**

### 1)      <u>**The Plaintiff's Failure to Comply with Deadlines**</u>

Zhou Wenbo respectfully submits that the Court should broadly define deadline for purposes of determining this motion. Here, as set out above, Plaintiff and its counsel had a duty, upon appearance ex parte, to fully and completely inform the Court of all relevant facts. Yet Judge Kendall was met with an ex parte application for a TRO, including an asset restraining order, that she proceeded to grant without knowing that four of the listed defendants were actually owned and operated by the Plaintiff, that Plaintiff actually does business through at least sixty ecommerce stores instead of one and that photographs of delivered products then in Plaintiff's possession showed the senders' names and addresses, including that of Zhou Wenbo. Had Judge Kendall been properly informed, she almost certainly would not have granted the extremely broad injunctive relief contained in the TRO nor would she have granted Plaintiff's

request for electronic service of process. [Docs. 28, 29] The applicable deadline for disclosure of these facts was the date of filing of both motions or, at latest, the date of presentation, that being July 8 or 10, 2019. [Docs. 7-8, 28, 29] Had Plaintiff met its duty of candor to the tribunal, briefing on injunctive relief would have likely been completely avoided.

As Judge Cole noted in his R&R, [Doc. 323 at 8-9] this Court ordered the Plaintiff to respond to Zhou Wenbo's motion to vacate by November 5, 2019. [Doc. 142] At 11:51 p.m. on the date its response was due, Plaintiff moved for an extension of the deadline. [Doc. 169] Zhou Wenbo submitted his opposition on November 8, 2019. [Doc. 175] This Court granted Plaintiff's motion for extension of time over Zhou Wenbo's objection and gave Plaintiff until November 19, 2019, to respond to the motion to vacate, with Zhou Wenbo required to reply by November 26, 2019. [Doc. 177] Had the motion been agreed, it may be viewed differently. However, here Zhou Wenbo was burdened by an ever growing asset restraint, thus requiring an expedited resolution. Plaintiff's tardy request delayed that resolution. Such extensions by default, prejudicing the non-moving party, are properly disfavored. see *Monco v. Zoltek Corp.*, 2019 WL 4686547, at *2 (N.D. Ill. Sept. 26, 2019) ("Extensions by default, . . . and that is in reality what is sought by the defendants – ought not be allowed.").

On or about December 16, 2019, Defendants served Plaintiff's counsel with their first requests for admissions, interrogatories and production of documents, responses to which were due on January 15, 2020.  Plaintiff failed to timely respond to Defendants' discovery requests. On or about January 22, 2020, Defendants inquired of Plaintiff as to when they may expect to receive a response. On or about Thursday, January 23, 2020, Plaintiff finally presented its responses to Defendants' discovery requests. Even then, Plaintiff attempted to assert that no requests for admission were admitted or objections waived, a position that prompted Judge Cole,

in his R&R, to observe "That the Plaintiff argues against the application of this rule here, but argued for its application when it suited them [Dkt. #282, Par. 20] is at best feckless and at worst deceptive." [Doc. 323 at 15 FN.5] Via its responses to Defendants' requests for admissions, Plaintiff admitted a number of vital facts, including that it had "not sold any items bearing the GIRAFFE MARK to a customer in Illinois through its store on the Wish platform" and that it had not "sold any items bearing the GIRAFFE MARK to a customer in the United States through the Taobao store XiYanJingPin." [Doc. 248-1 at 2-3] When Zhou Wenbo earlier presented evidence of first use of the Giraffe Mark in the United States and Illinois, Plaintiff met it with an argument that it had first sold one such product on September 26, 2013 through the Taobao store XiYanJingPin. [Doc. 60 at ¶¶6-7] The revelation of this fact, made via Plaintiff's tardy discovery responses, required Plaintiff to request leave [Doc. 249] to submit an additional brief on continuation of the preliminary injunction [Doc. 248] which the Court granted on January 30, 2020. [Doc. 253]

As further set out above, while continuing to hold out to the Court that it did business through a single Wish.com store, Plaintiff did not produce documents to Zhou Wenbo revealing the nature and identity of its business until March 17, 2020. [Doc. 271-5 at 4, 9-17] Plaintiff failed to update its interrogatory responses to identify these additional stores until July 7, 2020.[2] [Doc. 374-2] Nowhere in its MIDP disclosures, presented on November 6, 2019 and amended on

---

[2] While Plaintiff contended, via letter of July 1, 2020, [Doc. 374-1 at 2] to have sent its amended interrogatory responses to Zhou Wenbo on March 20, 2020, Plaintiff has never produced, in spite of repeated requests from Zhou Wenbo, any evidence to substantiate this claim nor has it acknowledged that the amended interrogatory responses were not sent to Zhou Wenbo on March 20, 2020. [Doc. 374-2] To the extent that it may be determined that Plaintiff did not, in fact, send the amended interrogatory responses to Zhou Wenbo on March 20, 2020, as it alleges, this too may serve as grounds for sanctions up to and including dismissal with prejudice. see *In re Thomas Consolidated Indus., Inc.*, 456 F.3d 719, 725-26 (7th Cir. 2006) (affirmed dismissal where the party tendered late discovery responses and lied to suggest that the responses were tendered before the sanctions motion was filed)

December 20 and December 31, 2019 is there any indication that Plaintiff relies on voluminous sales records of previously unidentified ecommerce stores to prove its claims. [Docs. 374-10; 374-11; 374-12] Had Plaintiff timely produced the photographs of delivered product showing Zhou Wenbo as the sender, this would have been addressed at briefing on the continuation of the asset restraining provisions of the preliminary injunction. Yet Plaintiff waited until February 20, 2020 to place these photographs on record [Doc. 258-33 at ¶¶ 6-24] and until March 17, 2020 to produce them to Zhou Wenbo. [Doc. 271-3] The reason for this late production is apparent. In a brief in support of the continuation of the preliminary injunction, filed on February 20, 2020, Plaintiff conceded that between the parties Defendants had first used the Giraffe Mark in U.S. commerce and asserted a new theory that Defendants had failed to independently establish trademark rights. [Doc. 258 at 2-6] Having been forced to make this concession and with the asset restraining provisions of the preliminary injunction having been lifted completely, [Docs. 236, 244] Plaintiff was forced to reveal this previously suppressed information to support its new theory and to attempt to avoid the consequences of its failure to timely respond to Zhou Wenbo's request for admissions. [Doc. 248-1]

2) **Apportionment of Responsibility**

In assessing this factor, Zhou Wenbo respectfully submits that the Court should be guided by the well established principle that "the conduct of one's lawyer is imputed to the client." *Bd. of Trs. of Pipe Fitters' Ret. Fund v. Commercial Cooling & Heating, Inc*, No. 13 C 7731, at *33 (N.D. Ill. May 28, 2019) (collecting cases) "Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer

would not suffer either. The court's power to dismiss a case is designed both to elicit action from the parties in the case at hand and to induce litigants and lawyers in other cases to adhere to timetables. A court cannot lightly excuse a litigant because of the lawyer's neglect without abandoning the pursuit of these objectives." *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 755 (7th Cir. 2015) citing *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986). However, to the extent that the Court may consider the effect on Plaintiff for their lawyer's misdeeds, the blame is properly apportioned between them.

It is Plaintiff that instituted this suit on the basis of a copyright registration that it knew to be invalid. [Docs. 3-1; 60 at ¶ 5; 314-1; 323 at 25] It was further Plaintiff that attempted to claim an earlier date of use than that shown on the trademark application [Doc. 52-1 at 3] via a Taobao store on March 4, 2013 with the item first being sold on September 26, 2013. [Doc. 60 at ¶¶ 6-7] Not until Plaintiff tardily responded to Zhou Wenbo's first discovery requests on or about January 23, 2020 did Plaintiff admit that it had "not sold any items bearing the GIRAFFE MARK to a customer in Illinois through its store on the Wish platform" and that it had not "sold any items bearing the GIRAFFE MARK to a customer in the United States through the Taobao store XiYanJingPin." [Doc. 248-1 at 2-3] It is undisputed and indisputable that activity outside of the United States does not create rights in marks within the United States. *Linville v. Rivard*, 41 U.S.P.Q.2d 1731 (T.T.A.B. 1996); *La Societe Anonyme des Parfums Le Galion v. Jean Patou*, 495 F.2d 1265, 1270 n. 4 (2d Cir.1974) ("[I]t is well settled that foreign use [of a trademark] is ineffectual to create trademark rights in the United States."); *Mother's Restaurants Inc. v. Mother's Other Kitchen, Inc.*, 1983 WL 51992, 218 U.S.P.Q. 1046, 1048 (1983); *Stagecoach Properties, Inc. v. Wells Fargo & Co.*, 1978 WL 21236, 199 U.S.P.Q. 341, 349 (1978); see also McCarthy § 29.3 ("Prior use of a trademark in a foreign country does not entitle its owner to

claim exclusive trademark rights in the United States as against one who used a similar mark in the U.S. prior to entry of the foreigner into the domestic American market.") Plaintiff participated in a ruse to further delay resolution of the case on the merits by arguing, without elaboration or disclosure of the fact that it had never sold items bearing the GIRAFFE MARK into the United States, that it had established trademark superior rights via sales on its TaoBao store. [Doc. 60 at ¶¶ 6-7] This factor supports dismissal.

### 3)    Effect on the Judges' Calendar and Time

As Judge Cole observed in his R&R, "as the case evolved, one of the most convoluted and confusing dockets in memory began to appear." [Doc. 323 at 5] Zhou Wenbo could not but agree. While the initial ex parte TRO was entered on July 10, 2019, [Docs. 28, 29] the question of whether injunctive relief was appropriate and should continue was not fully resolved until June 3, 2021, [Doc. 357] with additional filings related to the scope of the final order completely lifting the injunction as to Zhou Wenbo being submitted on June 7, 2021, [Docs. 360, 361] and an additional order being entered on June 24, 2021 [Doc. 371] which, due to its content, will need to be addressed in at least one additional filing. Altogether, the Court was forced to consider a multitude of filings that would not have been necessary had Plaintiff and its counsel been truthful in their presentation of the nature and identity of its business and provided Judge Kendall with the photographs of delivered products that they suppressed until they were forced to make a calculated decision to reveal their existence in the face of dispositive evidence establishing that Zhou Wenbo is the senior user of the Giraffe Mark in the United States. In sum, filings related to the entry and continuation of injunctive relief and, to a much lesser extent, miscellaneous other relief based on the same misrepresentations and omissions, have defined a case that could have easily been resolved on the merits alone with the following citations to them

and the court orders that necessarily followed from them illustrating the point. [Docs. 6-49; 52-53; 55-56; 60; 63; 67; 69-73; 77-84; 93; 95-96; 100-101; 108-112; 114-117; 120-121; 123-124; 134; 138-139; 155-158; 161; 164; 166-167; 169-170; 175; 177-178; 182-186; 189-197; 201; 211-212; 215-216; 218-220; 222-223; 226-228; 230; 232; 236-242; 244-245; 247-251; 253-255; 258-261; 264; 271-276; 279-281; 284; 287; 290; 315-318; 322-323; 329; 331; 333; 335; 343; 352-354; 356-357; 360-361]

### 4)      The Prejudice to Zhou Wenbo

As set out above, due to the misconduct of Plaintiff and its attorneys, Zhou Wenbo was forced to engage in extensive litigation surrounding a preliminary injunction that would have never been entered but for their deception. When Zhou Wenbo appeared in opposition, Plaintiff continued to suppress evidence germane to the preliminary injunction until after the asset restraining provisions of the preliminary injunction had been lifted and briefing had closed. Yet Plaintiff's dilatory behavior did not stop there. When the magistrate issued his R&R finding that Plaintiff had no probability of success on any of its claims, Plaintiff filed frivolous objections, [Doc. 329] forcing Zhou Wenbo to engage in additional briefing and review [Docs. 333, 335] The R&R was entered on August 10, 2020 and briefing on the objections completed on October 1, 2020. The Court reviewed the R&R *de novo* and adopted its findings on June 3, 2021. [Doc. 357] In stating its ruling on record, the Court noted that Plaintiff simply failed to respond to the concerns raised in the R&R. Specifically, the Court found that Plaintiff failed to adequately respond to the finding that Plaintiff had failed to show that it sells its products in the United States at all. [June 3, 2021 Hearing Trans. at 28:20-22] The Court further noted that "The plaintiff has had numerous opportunities to provide evidence of its product type, but has continued to rely on an unauthenticated screenshot that provides very little information," a fact

that the Court found "telling." [Hearing Trans. At 30:8-13] In addressing Plaintiff's failure to provide evidence of sales to the United States and Illinois, the Court observed that "Judge Cole specifically commented on the lack of evidence of sales in the United States and in Illinois in the Report and Recommendation. And, yet, the plaintiff did not attach these documents to the objections. Rather, the plaintiff repeated its prior argument, pointing to the Wang declaration as evidence." [Hearing Trans. at 32:22-33:2] On the whole, the Court found Plaintiff's presentation to be undeveloped, conclusory and unresponsive to the R&R. [Hearing Trans. at 33:17-19; 34:14-17; 34:21-25; 35:22-24; 37:18-21; 38:10-15; 48:5-8] Plaintiff agrees with the Court's decision and observations and submits that it is reasonably inferred that Plaintiff lacked good faith intent in objecting to the magistrate's well set out R&R. Rather, Plaintiff simply sought, and in fact achieved, a *de facto* extension of the preliminary injunction, thus preventing Zhou Wenbo from utilizing the Giraffe Mark to which he has established superior rights as the senior user.

### 5)  Probable Merits of the Suit

Both the magistrate and district court have determined that Plaintiff has failed to show a likelihood of success on the merits of any of its claims. [Docs. 323, 357] This factor weighs in favor of dismissal.

### 6)  Social Objectives

The Seventh Circuit has long acknowledged the potential for abuse inherent in intellectual property suits and has admonished those bringing such suits in appropriately harsh terms. see *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 888 (7th Cir., 2000) ("Trademark suits, like much other commercial litigation, often are characterized by firms' desire to heap costs on their rivals, imposing marketplace losses out of proportion to the legal merits."); *Brownmark Films, LLC v. Partners*, 682 F.3d 687, 2012 Copr.L.Dec. P 30270, 102

U.S.P.Q.2d 1974, 40 Media L. Rep. 1821 (7th Cir., 2012) ("The expense of discovery, which SPDS stressed at oral argument, looms over this suit. SPDS, and amicus, the Electronic Frontier Foundation, remind this court that infringement suits are often baseless shakedowns. Ruinous discovery heightens the incentive to settle rather than defend these frivolous suits."); *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017) ("Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation."); *Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*, No. 18-3202, at *1 (7th Cir. June 16, 2021) ("In recent years, however, a cottage industry of opportunistic copyright holders—earning the derisive moniker 'intellectual property trolls'—has emerged, in which a troll enforces copyrights not to protect expression, but to extract payments through litigation."); *Design Basics, LLC v. Signature Constr., Inc.*, No. 19-2716, at *1 (7th Cir. Apr. 23, 2021) (same).

Not all intellectual property suits can be characterized as attempts at trolling nor does the invocation of the term automatically change the Court's analysis of an intellectual property claim. see *Energy Intelligence Grp. v. Exelon Generation Co.*, Case No.: 20-cv-3983, at *3-4 (N.D. Ill. Apr. 21, 2021). However, here Zhou Wenbo does much more than intone the phrase. As Judge Cole concluded in his R&R, "What the case distills down to is a business spat between internet businessmen – Dong Dong Zhao and Houbing Wang on the Plaintiff's side, and Zhou Wenbo on the Defendants'..." [Doc. 323 at 3] Plaintiff's suppression of evidence identifying Zhou Wenbo as the sender of items claimed to be counterfeit and overall evasive, dilatory conduct, coupled with the weakness of its case, supports a finding that Plaintiff does not seek to utilize the Lanham Act and Copyright Act for their intended purpose but to leverage a settlement from Zhou Wenbo, a successful ecommerce entrepreneur well known to both of them. [Doc. 48

at ¶¶ 13-20] Due to these circumstances, dismissal will not impair the proper purpose of a suit seeking compensation and deterrence for violation of intellectual property rights.

### 7) **Prior Disciplinary History**

On this Count, Zhou Wenbo respectfully submits that the Court should consider Mr. Urbanczyk's apparent involvement with the Prenda Law scheme as evidence of prior misconduct, ultimately unpunished though it may have been. Further, Zhou Wenbo shows that Mr. Urbanczyk and Ms. Buterman are not the only attorneys engaged in this case. As shown by communications between Mr. Urbanczyk and counsel for Payoneer and the fact that he has received communications from Zhou Wenbo without objection, Mr. Yiheng "Roy" Lou, Mr. Urbanczyk's partner in a firm known as Mainleaf Law, is also involved in this case. [Doc. 271 at ¶ 14; 271-6; 271-10 at 3] Mr. Lou has a significant disciplinary history which extends to Mainleaf. On May 12, 2021, a final order by consent between the Director of the Office of Enrollment and Discipline ("OED Director") for the United States Patent and Trademark Office ("USPTO" or "Office") and Mr. Luo was endorsed by the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("USPTO Director") in the Matter of Yiheng Luo, Proceeding No. D2021-04. [Doc. 374-13] In sum, Mr. Lou engaged in a corrupt scheme whereby he rented his law license and USPTO filing credentials to a Chinese intellectual property agency for use on behalf of overseas trademark applicants in exchange for as little as $20.00 per application filed. [Id. at 3] The USPTO suspended Mr. Lou for three months, imposed twenty-one months of probation and, among other sanctions, required that Mr. Lou agree to cooperate in any future investigations related to himself, Mainleaf and any practitioners that provide legal services through the Chinese agency. [Id. at 8-10]

**b)** **Delay, Contumacious Conduct, or Less Drastic Sanctions**

**1)** **Delay**

Zhou Wenbo respectfully submits that there has been a clear record of delay by Plaintiff in this case. As set out in the analysis of the first *McMahan* factor and elsewhere above, after obtaining far reaching injunctive relief on an ex parte basis while failing to disclose vital information that would have certainly foreclosed the grant thereof, Plaintiff failed to timely submit its responses to Zhou Wenbo's first discovery requests, delivering them a week late. [Doc. 248-1] Plaintiff then dribbled out documents and information when and as it suited it, culminating, on March 17, 2020, after briefing on the preliminary injunction closed, [Doc. 258] in a document dump consisting of approximately 164,000 unmarked pages of purported sales records for not one, as maintained by Plaintiff, but sixty ecommerce stores on the Wish.com platform, including four that were named as defendants in this case, remaining so long after they were served with the First Amended Complaint. [Docs. 271-1 at 3-5; 332 at ¶ 29] In sum, from Plaintiff's first appearance, it has acted to delay resolution of the case and to achieve through deception and surprise what both the magistrate and district court found that it could not accomplish on the merits. [Docs. 323; 357] This factor favors dismissal.

**2)** **Contumacious Conduct**

"Contumacious" conduct is conduct that is perverse in resisting authority, stubbornly disobedient, or rebellious. See *Anderson v. United Parcel Serv.*, 915 F.2d 313, 313 (7th Cir. 1990); Contumacious, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/contumacious (last visited July 2, 2021). Plaintiff's conduct meets this definition. As set out above and as the Seventh Circuit has held in multiple cases, "it goes without saying and hardly needs citation that a court need not warn a plaintiff, and

particularly not a lawyer, that it may not lie to a court." *Fuery v. City of Chi.*, 900 F.3d 450, 466 (7th Cir. 2018) (citation omitted) Rather, "A litigant must present issues candidly to the judge and may not presume that, because (in the litigant's view) a judge should rule in his favor, he is entitled to keep the judge in ignorance." *Wheeler v. Talbot*, 695 F. App'x 151, 155 (7th Cir. 2017) The undisputed course of conduct set out above more than meets the definition of contumacious conduct.

Further, members of the bar have an obligation to treat opposing counsel with courtesy and respect. *In re Snyder*, 472 U.S. 634, 647 (1985); *Harrington v. City of Chicago*, 433 F.3d 542, 548-9 (7th Cir. 2006). Criticism of opposing counsel or the court is permitted and sometimes warranted, but the criticism should be professional and civil. See *In re Snyder*, 472 U.S. at 647. And the criticism must have a basis in law or fact. See *In re Nora*, 778 F.3d 662, 665-66 (7th Cir. 2015) (an attorney's "bandying about of serious accusations" against judicial officers and opposing counsel "without basis in law or fact [was] unacceptable and warrant[ed] sanctions"). "Litigants... who make false charges, perhaps just for the pleasure of vexing the defendants, are abusing the judicial process and injuring other litigants as well as the judicial system. This is intolerable and must cease." *Rivera v. Drake*, 767 F.3d 685, 688 (7th Cir. 2014) "There is a difference between zealously advocating for one's clients and unnecessarily disparaging opposing counsel." *Wiese v. Community Bank of Cent*, 552 F.3d 584, 591 (7th Cir. 2009).

In this case in which both the magistrate and district court have found that Plaintiff has no likelihood of success on the merits of any of its claims, [Docs. 323, 357] Plaintiff has been singularly insistent that every action taken by Zhou Wenbo in his defense is motivated by nothing but a desire to impose costs on Plaintiff. [Docs. 230 at 3, FN.2 & FN.3; 338 at 2-3, 7, 9;

350 at 7] In sum, Zhou Wenbo's counsel, undersigned, having tenaciously litigated the case in the face of the misconduct set out above, is, according to Plaintiff and its counsel, bad. Plaintiff's opposition to Zhou Wenbo's motion to strike affirmative defenses was so dedicated to this tact that Zhou Wenbo's reply stated, with apparent exasperation, that "There is little of substance that Counter-Plaintiff can respond to." [Doc. 344 at 2] Throughout, Zhou Wenbo and his counsel have been clear, unequivocal and consistent in their response to these attacks, inviting Plaintiff to file a motion if they believe that any standard has been violated. [Docs. 232 at 3-4; 344 at ¶ 2] Zhou Wenbo even went so far as to advise Plaintiff of the authority that it should proceed under. [Id. at ¶ 4]

In his opposition to Plaintiff's second motion for contempt, Zhou Wenbo, seeking some relief from this incessant barrage, asked the Court to require Plaintiff to file a motion for sanctions on whatever its allegations are with fees to be assessed if the motion failed. [Doc. 355 at 15] Zhou Wenbo argued that "The Court should not permit Plaintiff and its counsel to continue to throw stones from the rooftop, attempting to inflict reputational damage on Zhou Wenbo and his counsel, without accountability. The Court should order Plaintiff to file a motion for sanctions immediately. Plaintiff and its counsel apparently have all they need to make these allegations. They should be prepared for adversarial testing." [Id.] Yet nothing from Plaintiff. Neither the put up or the shut have ever come nor does it appear either ever will. Plaintiff insists on denying Zhou Wenbo his entitlement of being advised as to the basis, if any, of these allegations to then defeat them, to be seen defeating them and to have Plaintiff and its counsel be seen as having been defeated in making them. Plaintiff and its counsel having failed to adhere to basic standards of decorum and civility in defiance of the commandments of the Seventh Circuit Court of Appeals, as cited above, this factor weighs in favor of dismissal with prejudice.

### 3) <u>Less Drastic Sanctions</u>

Plaintiff's course of conduct suggests that no sanction other than dismissal with prejudice will suffice to effectively redress the misconduct of Plaintiff and its counsel or deter them from continuing to engage in such conduct. As Judge Iain Johnston recently put it, "Rather than learning from their mistakes, [Plaintiff] continued unfazed down the same path, belittling [Zhou Wenbo's] repeated and legitimate concerns in the process." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, at \*197 (N.D. Ill. Jan. 19, 2021) According to Plaintiff and its counsel, they are the victims in this case. Zhou Wenbo's assets, at one point exceeding $1,395,584.99, [Doc. 194 at ¶ 8; 194-1] were restrained from July 10, 2019 to January 17, 2020, [Docs. 29, 236, 244] during which time Plaintiff sought to leverage the overly broad asset restraint to extort funds from Zhou Wenbo for settlement of its frivolous claims. [Doc. 350 at ¶ 7; 350-4]

From July 10, 2019 to June 3, 2021, [Docs. 29, 357] Zhou Wenbo was prohibited from utilizing a trademark that he has clearly established rights to. Plaintiff was never subject to any restraint other than, conceivably, in the accounts linked to the four ruse defendants through which it sought to proceed [Doc. 271-6; 332 at ¶ 17] and has had exclusive use of the GIRAFFE MARK due to the injunctive relief which it obtained by fraud and consistently delayed to keep in place as long as possible. Yet, in the view of Plaintiff and its counsel, Zhou Wenbo and his counsel have greatly imposed upon them by defending the suit and prosecuting his counterclaim. In response to the egregious misconduct set out above, Plaintiff and its counsel have continued with their narrative of victimhood, shrugging off any responsibility to say "What about it?" Zhou Wenbo respectfully submits that this factor weighs in favor of dismissal with prejudice.

44

## V.     CONCLUSION

In conclusion, Zhou Wenbo respectfully submits that the Court should consider the instant motion in its entirety and in total context. The misconduct that is the basis of the instant motion for sanctions has taken place in a niche area of intellectual property litigation that, as set out above, is well recognized as being susceptible to abuse. As Judge Durkin recently commented, "District courts have tolerated this procedural thicket due to the unusual nature of the epidemic of counterfeit goods being sold in the United States by non-U.S. merchants. But the shear (sic) mass of defendants, most of whom either never appear or readily concede liability, has the potential to obscure legitimate defenses." *Square One Entm't Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, No. 20 C 5685, at *6 (N.D. Ill. Apr. 5, 2021) It was this state of affairs that Plaintiff and its principals sought to capitalize on when they brought this patently frivolous case, sought and obtained, via fraud, far reaching injunctive relief and then continued with the fraudulent course of conduct described in detail above to keep the fraudulently obtained injunctive relief in place as long as possible, to their benefit and Zhou Wenbo's detriment.

The Court should also consider that in the face of an uninterrupted onslaught of incivility from Plaintiff and its counsel, neither Zhou Wenbo or his counsel, while expressing indignation, has reciprocated. In fact, Zhou Wenbo and his counsel have treated Plaintiff and their counsel with the utmost courtesy and consideration. When the fact of Plaintiff's having proceeded through four ruse defendants and that Plaintiff operates not one but sixty ecommerce stores, in contradiction to its repeated submissions to the Court, came to light, Zhou Wenbo did not rush to the Court to seek sanctions. Rather, acting  under the perhaps naive view that "[A lawyer is] received into that ancient fellowship for something more than private gain. He [becomes] an

officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice," *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470–71, 162 N.E. 487 (1928) (Cardozo, C.J.) undersigned counsel arranged to speak privately with Plaintiff's counsel, assuring them, so that they would have no fear of speaking freely and candidly when confronted with the contents of evidence that they had provided to Plaintiff approximately two months earlier. [Doc. 271 at 33-4] It was Zhou Wenbo's hope that Plaintiff and its counsel would act as required, correct their false representations to the Court and that perhaps the case might be quickly dismissed, as one would expect under the circumstances.

When, on June 9, 2020, Zhou Wenbo brought this information to the Court, it was not in a motion for sanctions but rather to seek an order of protection to preserve certain evidence, for expedited discovery and to terminate the referral to the magistrate so that this Court could determine any requests for sanctions without complication. [Doc. 279] When the Court did not act immediately, as anticipated, but instead set a briefing schedule, Zhou Wenbo moved to withdraw the motion, citing changed circumstances, in hopes that the magistrate, with the ability to speak to the attorneys less formally and in chambers, might take ownership of and deal with the situation. [Doc. 287] Zhou Wenbo's hope that Plaintiff and its counsel might meet their ethical responsibilities or that this Court or the assigned magistrate might sua sponte address the issue, thus avoiding the instant motion and the ensuing scandal of Mr. Urbanczky again being involved in a case involving ruse defendants met only with inaction and disappointment. In the Prenda Law cases, in addition to having concerns raised by a prospective client, opposing counsel and Cook County Circuit Court Judge Sanjay Tailor, Mr. Urbanczyk was the focus of rather intense public criticism, if not ridicule. [Docs. 374-14 to 374-20] In sum, in a case in which, as set out above, Plaintiff and its counsel have directed an unrelenting torrent of derisive

ad hominems at Zhou Wenbo and his counsel, the latter acted with decency, consideration and even collegial concern and with the forlorn hope that the instant motion might be avoided.

While the sanctionable conduct set out above is unfortunate, Zhou Wenbo submits that this Court and others should view these circumstances as a teachable moment. How exactly is it that two failed Chinese businessmen filed a lawsuit in the federal district court in Chicago, Illinois fantastically claiming that they sell shirts bearing the GIRAFFE MARK that are "some of the most well-recognized and popular clothing items on the market..." that are "instantly recognizable among the consuming public... in the United States and around the world..." [Doc. 7 at ¶¶ 12, 18] when, as Judge Cole observed, it is found on no list of popular clothing items, [Doc. 323 at 3] with Plaintiff having filed suit "in a place where their products are unknown[?]," [Id. at 21] to then obtain injunctive relief, including an asset restraint unlimited in scope, which they then utilized to attempt to shake down Zhou Wenbo for settlement in an amount detached from any damages that Plaintiff might have been able to claim even if its claims had been valid? How and why is it that this injunctive relief, initially granted ex parte, was permitted to remain in place, in part, from July 10, 2019 [Doc. 29] to June 3, 2021 [Doc. 357] with briefing having concluded on February 20, 2020 [Doc. 258] and with an R&R having issued on August 10, 2020 finding that Plaintiff has no likelihood of success on the merits of any of its claims? [Doc. 323] Certainly, multiparty intellectual property suits have their place and purpose but it is apparent that Judge Kendall, in issuing the initial TRO, [Doc. 28] subsequently converted into a preliminary injunction [Doc. 43, 46] failed to discern between a legitimate case brought to protect intellectual property rights and fraudulent attempt at intellectual property trolling, something that Judge Kendall should have been on guard against in light of the pronouncements of the Seventh Circuit in place at the time of issuance. And when Zhou Wenbo showed through

47

indisputable evidence, unrefuted and now admitted, that the Court had been hoodwinked, Plaintiff was permitted to continue to reap the benefits of its misconduct for almost another year, monopolizing for themselves the profitable market in shirts bearing the GIRAFFE MARK and shutting out Zhou Wenbo, the senior user with superior rights to the mark. [Docs. 48 at ¶¶ 8-11; 100 at 3-4]

This case has exposed vulnerabilities in our system of dispute resolution as surely as the Prenda Law cases and other instances of abusive intellectual property litigation. Zhou Wenbo respectfully submits that in resolving the instant motion, the Court should be reflective as to this failure and should enter an opinion order that, in addition to setting out its basis for punishment of the misconduct of Plaintiff and its counsel, as requested herein, acknowledges the institutional failures that permitted them to perpetrate and profit therefrom. The Court should act to both punish and deter Plaintiff and its counsel from further abuse and exploitation of the judicial process by imposing sanctions that others who might consider similar conduct will view as a deterrent. The Court should make Zhou Wenbo whole by dismissing Plaintiff's case, entering judgment in his favor on his counterclaim, either directly or by striking Counter-Defendants' answer and by awarding Zhou Wenbo the full and complete costs of his defense, including his reasonable attorney fees.

(Date and Signature on the Next Page)

Respectfully submitted this 5th day of July, 2021,

/s/ L. Ford Banister, II
Bar No. 5446539
Ford Banister IP
305 Broadway - Floor 7,
New York, NY 10007
Telephone: 212-500-3268
Email: ford@fordbanister.com
*Attorney for Defendant/Counter-Plaintiff*
*Zhou Wenbo*